SHELTER MUTUAL INSURANCE CO., Respondent,

v.

Steven FLINT and Connie Flint, Appellants.

No. WD 45182.

Missouri Court of Appeals, Western District.

July 14, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 1, 1992.

Application to Transfer Denied Oct. 27, 1992.

Andrew J. Gelbach, Warrensburg, for appellants.

James C. Johns, Clinton, for respondent.

Before SHANGLER, P.J., and KENNEDY and SMART, JJ.

SHANGLER, Judge.

This appeal is from a summary judgment entered in favor of Shelter Mutual Insurance Co. on its petition for declaratory judgment that the insurance policy issued to Connie and Steven Flint was not in force on January 4, 1990.

On that date, Connie Flint was operating a 1985 Ford Tempo she owned with Steven Flint and collided with an Isuzu owned by Christine McCreary and operated by William Pennington. Jake McCreary was a passenger in the Isuzu and Sue Johnson was a passenger in the Tempo. The Flints made demand for payment of property damage to the Tempo and for other benefits of coverage under the policy with Shelter Mutual. Shelter brought an action for declaratory judgment and joined as defendants the Flints, Sue Johnson, Jake McCreary, Christine McCreary and William Pennington. The defendants Flint moved to add as a necessary party Citizens–Jackson County Bank, lienholder and loss payee on the Shelter policy. The motion for summary judgment of insurer Shelter was sustained. The motion of defendant Flint to add Citizens as a necessary party was denied. The Flints appeal from the order of summary judgment.

The record on summary judgment viewed most favorably to the Flints, against whom judgment was rendered, discloses these facts. On June 2, 1989, Steven and Connie Flint applied for automobile insurance coverage with Shelter through its agent, James Martin. The agent bound coverage for thirty days. A premium of $109.60 was computed for a three month term with liability coverage in limits of $50,000/$100,000 and separate collision and other coverages. Citizens–Jackson County Bank was shown on the application and binder as the loss payee. Shelter asserted by affidavit that Shelter policy No. 24–1–4181046–1 was issued to the Flints with coverage on the 1985 Tempo for a period from 2:15 p.m. on

June 2, 1989, to 12:01 a.m. on September 2, 1989. The Flints assert by deposition and affidavit that they never received the policy. They acknowledge nevertheless that they knew they were purchasing a policy of insurance from Shelter and that the terms of their coverage were governed by the policy.

The policy required renewal every three months. The first renewal premium notice was received and paid by the Flints before September 2, 1989. The coverage was thereby continued for another three month term ending on December 2, 1989. The second renewal premium notice was sent by Shelter before December 2, 1989 and indicated that a renewal premium was due on that date.

The premium notice showed a due date of December 2, 1989, at 12:01 a.m. to renew the policy for an additional three month term. The Flints received the premium notice some time before December 2, 1989. The Flints did not pay or attempt to pay the renewal premium on the policy prior to the collision with Pennington on January 4, 1990. On December 15, 1989, Haddie Gabbert, a secretary at the local Shelter Mutual office, called Connie Flint as to why the renewal premium had not been paid. Flint explained that they were financially unable to pay the premium. On December 18, 1989, Robert Maupin, Shelter vice-president wrote the Flints about the non-payment of the premium. The letter stated that the insurance policy would be reinstated on the date the company received payment. On January 6, 1990, two days after the collision, Steven Flint remitted the $109.64 premium to Shelter Mutual.

Shelter vice-president Dysart sent a letter to Citizens–Jackson County Bank on December 28, 1989. The letter informed the bank that the insurance coverage as to its interest would be terminated and canceled on January 7, 1990 for non-payment of premium. The letter also indicated that the premium could be paid by the bank.

The summary judgment to Shelter Mutual expressly determined that under the evidence presented on the motion, there was a lapse of insurance coverage from December 2, 1989 to January 6, 1990, for want of payment of premium. Accordingly, "there was no automobile insurance coverage for the defendant Flints, issued by plaintiff [Shelter Mutual Insurance Company] on January 4th, 1990, the date of the accident with defendants McCreary, Pennington and Johnson," and that no issue of material fact remained to be adjudicated under the petition for declaratory judgment.

The Flints contend that the summary judgment was erroneous because issues of material fact were in controversy and were not precluded as a matter of law. They argue that questions remain as to (1) whether the insurance policy was ever delivered to the Flints or received by them prior to the date of the collision (2) whether Shelter Mutual misled the Flints to believe that they had until January 7, 1990 to pay the premium (3) whether Shelter Mutual misled the Flints to believe that they had insurance coverage from December 2, 1990 until March 2, 1990.

■ The party who moves for summary judgment bears the burden to show that no genuine issue of fact remains, and so is entitled to judgment as a matter of law. Rule 74.04(c); *American Family Mut. Ins. Co. v. Lacy*, 825 S.W.2d 306, 308[1, 2] (Mo. App.1991). On appeal, we view the record in the light most favorable to the party against whom the motion was filed. *Gast v. Ebert*, 739 S.W.2d 545, 546 (Mo. banc 1987).

■ The Flints contend that whether Shelter Mutual ever delivered an insurance policy to the Flints or was received by them prior to the date of the collision remained in dispute as an issue of material fact and so precluded summary judgment. In their affidavit and deposition, the Flints declare that they never received the insurance policy from Shelter. The motion by Shelter for summary judgment was supported by the affidavit of James Kunze, manager of Policy Administration Systems for the company. The affidavit recites that policy of insurance No. 24–1–4181046–1 was mailed to the Flints on or about June 12, 1989. The policy was on the same form as the

exhibit attached to the summary judgment motion.

■ A letter duly mailed is attended by the presumption of receipt by the addressee. *Miller v. John Hancock Mut. Life Ins. Co.*, 155 S.W.2d 324, 328[15] (Mo. App.1941). A letter is duly mailed when it is placed in an envelope with the correct address of the recipient, stamped with sufficient postage, and deposited in the mail. *Hills v. McComas Rentals, Inc.*, 779 S.W.2d 297, 299[1] (Mo.App.1989). When the customary volume of mail is large, so that direct proof that a particular letter was mailed is not feasible, "evidence of the settled custom and usage of the sender in the regular and systematic transaction of its business is sufficient" to give rise to the presumption of receipt by the addressee. *Id.* The Kunze affidavit recites that not only were all mailings of insurance policies in his charge, but also the premium notices. In such case, the settled custom of the sender in the regular transaction of its business suffices to establish the presumption of receipt. *Lake St. Louis Community Ass'n v. Ringwald*, 652 S.W.2d 158, 160–61[5, 6] (Mo.App.1983). The regularity of the Shelter mailings was confirmed by the acknowledgments of the Flints that the two premium notices mailed to them were received and paid. The response of the Flints, simply, that they did not receive the policy, to this evidence of mailing by Shelter on summary judgment did not dispel the presumption of receipt that attends that proof.

■ The Flints argue insistently nevertheless that prior to the collision of January 4, 1990, they had no opportunity to read or even see the policy. They argue that the binder did not advise them of the "conditions or terms for termination, cancellation, or nonrenewal [of the policy] for late payment of the premium." In the absence of the insurance policy, therefore, they could not be bound by the terms of "nonrenewal or cancellation for late payment of premium."

Were we to agree that the issue of the delivery and receipt of the policy remained open, the order of summary judgment remains valid. The binder contained within the automobile insurance application binds the insurance applied for "in accordance with the form in current use." The Flints argue, rather, that the application and binder constituted the complete insurance agreement between them and Shelter, hence those are the only terms that bound them. They cite § 303.190, RSMo 1986, for that thesis. Thus, the policy provisions for "nonrenewal or cancellation for late payment of premium," provisions not within the insurance agreement, do not affect them.

■ The argument misreads the statute and is otherwise tendentious. It is tendentious because the issue is not that of "nonrenewal or cancellation for late payment of premium," but of lapse of coverage for nonpayment of premium. Nor do the statutory components, § 303.190.6(4) and § 303.190.11, that the Flints cite aid the argument. Section 303.190.6(4) provides that the policy, the written application and any rider or endorsement which does not conflict "shall constitute the entire contract between the parties." That simply integrates the various papers of a motor vehicle liability policy transaction into one contract. Section 303.190.11 provides that "[a]ny binder issued pending the issuance of a motor vehicle liability policy shall be deemed to fulfill the requirement for such a policy." That accords to a binder the efficacy of the terms and provisions of the policy applied for pending the issuance of the policy. *See* Z. COUCH ON INSURANCE 2d, § 14:37 (Rev. ed. 1984). Neither provision supports the contention that the application and binder operate as the "only contract between the parties," so that there is no obligation "to timely pay a future premium for insurance coverage to remain in force" where the binder does not define such a duty.

Nor do the two decisions the Flints cite assist the argument. In *Schmidt v. St. Paul Fire & Marine Ins. Co.*, 376 N.W.2d 237 (Minn.App.1985), the plaintiffs submitted an application for insurance. The defendant sent a binder letter with various coverages listed with an x placed next to

each coverage issued. An x was placed next to the entry: "VMM Term 1 Year (vandalism and malicious mischief)." The binder also recited a one dollar premium for "Vacancy Permit." A loss due to vandalism and malicious mischief occurred more than 90 days after issuance of the binder but before the policy was received by the plaintiffs. The policy itself excluded coverage for vandalism and malicious mischief if the property was vacant more than 60 days. The court found that the inclusion in the binder of an additional premium for "Vacancy Permit" could have misled the insured to believe that the exclusion for vandalism and malicious mischief due to vacancy was written out of the policy, and so was ambiguous. Accordingly, the court did not give effect to the more restrictive policy term. In the case before us, the insureds do not show or even contend for an ambiguity between the policy and the binder. They contend only that the policy language was never known to them, so that any policy provision for nonrenewal for nonpayment of premium was unknown to them and should not bind them.

■ In the other case, *Rodriguez v. General Accident Ins. Co. of Am.*, 808 S.W.2d 379 (Mo. banc 1991), the plaintiffs argued that the insurance policy was ambiguous, and so they were entitled to coverage consistent with their reasonable expectations. The court found that the policy was unambiguous so that the doctrine of reasonable expectations did not apply. So also there is no ambiguity here. The Flints correctly observe that the binder did not advise them that for their coverage to remain in effect, the premium had to be paid on time. But the binder itself advises that for the "[b]inder or any other policy of insurance issued thereon" to be effective there must be payment. Moreover, it is a premise of the reasonable expectations doctrine that the Flints invoke for coverage despite untimely payment of premium, that among the few terms usually negotiated in an otherwise adhesion transaction, such as the purchase of an insurance policy, are the cost of the premium, its mode of payment and the period of the coverage. *Spychalski v. MFA Life Ins. Co.*, 620 S.W.2d 388,

392–93 (Mo.App.1981). The doctrine treats those incidents of the insurance policy transaction as details to which the purchaser overtly assents. *Id.; see also Estrin Constr. Co. v. Aetna Casualty & Sur. Co.*, 612 S.W.2d 413 (Mo.App.1981). The continued coverage of the 1985 Tempo after 12:01 a.m. on December 2, 1989 despite nonpayment of premium due on that date was not a reasonable expectation of the Flints from the transaction. That expectation of coverage only on the condition of premium payment is expressly confirmed in the declaration page of the policy and again in the text itself.

■ The Flints acknowledge the binder provision in the application for insurance: "This Company binds as above applied for in accordance with the policy form in current use." By its terms, the binder incorporates the policy. In *Pape v. Mid-America Preferred Ins. Co.*, 738 S.W.2d 882 (Mo.App.1987), the plaintiffs made a claim under their insurance policy for loss of silverware from a burglary. The binder provided, "[t]his insurance is subject to the terms, conditions and limitations of the policy(ies) in current use by the Company." Prior to the issuance and receipt of the policy, the Papes were burglarized and $8,000 in silverware was stolen. The policy itself contained an exclusion limiting loss by theft to $1,000. The Papes contended that they were not bound by that restriction because it was not included within the terms of the binder. The court responded, "the binder issued to the plaintiffs was subject to the usual homeowners policy conditions expressly incorporated in the binder by reference." *Id.* at 886. The insureds were bound by the terms of the policy even though the policy had not been received at the time of the loss. That the company did not send, or that the Flints did not receive, the policy before the collision, therefore, was not an issue of material fact that precluded summary judgment.

■ The second issue of material fact the Flints contend remains unresolved is whether Shelter misled them to believe that they had until January 7, 1990, to pay the

premium. They argue that the effect of the letter of December 28, 1989, by Shelter to Citizens–Jackson Bank was to give the Flints until January 7, 1990, to pay the premium. And, in fact, on January 6, 1990, the Flints remitted the $109.64 premium. Thus, they conclude, the liability policy was in effect on January 4, 1990. The letter that they say misled them was addressed to the Citizens–Jackson Bank, not to the Flints. It informs the Bank that "[t]he insurance coverage *as to your interest*" [emphasis added] is terminated and canceled January 7, 1990. "The reason for termination is the premium has not been paid, and such premium may be paid by *you.*" [emphasis added]. Nothing is mentioned as to any interest of the Flints. That had already lapsed by the nonpayment of the premium. The express policy heading, CANCELLATION NONRENEWAL, provides:

> After this policy has been in effect for sixty days, or if it is a renewal,
>
> (1) we will not cancel the liability, medical payments, uninsured motorists, or physical damage coverage, except for the following reasons:
>
> (a) nonpayment of premium ...

■ It was the interest of Citizens–Jackson Bank that was to be terminated unless the premium was paid by January 7, 1990. That interest was separately defined and separately protected under the LOSS PAYABLE CLAUSE heading of the policy. Within paragraph (3) of that provision are the recitals: "When we pay the loss payee for loss for which you are not covered, we are entitled to the loss payee's right of recovery against you to the extent of our payment. Our right of recovery shall not impair the loss payee's right to recover the full amount of its claim. **The coverage of the loss payee's interest only is valid until we terminate it.** We will not terminate such coverage because of: (1) any act of negligence of the owner or borrower ..." [emphasis added]. It is self-evident that these provisions of the policy confer on the loss payee not only rights of recovery, but also rights of termination, separate from those accorded to the named insured. That is because such a loss payable clause "con-

stitutes a separate and distinct contract between the mortgagee and the insured up to the amount of the debt secured." *Charter Bank of Boonville v. Shelter General Ins.*, 664 S.W.2d 44, 46[1] (Mo.App.1984). It is an interest that cannot be invalidated by the neglect of the insured or the expiration of the insured's coverage because of nonpayment of premium. *Id.*

Nor, contrary to argument, is § 303.190.-6(1) implicated. That statute prohibits an insurance company to cancel, annul, or void insurance coverage after a motor vehicle accident. Here the coverage lapsed before the date of the accident for nonpayment of a premium that became due before then. That argument reverts to the premise that the Shelter letter gave "the Flints and/or the bank until January 7, 1990, to pay the premium." The letter was to the Bank and affected only its interests. There was no material issue of fact that Shelter misled the Flints to believe they had until January 7, 1990, to pay the premium that would preclude summary judgment.

■ The Flints argue also that there remains the material issue of fact as to whether Shelter misled them to believe that they had insurance coverage effective December 2, 1989, through March 2, 1990. When Shelter sent the premium notice for continued coverage for those dates, it included the insurance identification card showing coverage for that period. The Flints argue that Shelter thereby represented that they had coverage until March 2, 1990. Also thereafter, Shelter did not notify the Flints in writing that they did not have insurance coverage.

The premium notice was sent to the Flints about 20 days before it was due. At the bottom of the premium notice form were the identification cards. At the back of that form was a paragraph headed in bold type:

**NONPAYMENT SHELTER MUTUAL INSURANCE COMPANY and SHELTER GENERAL INSURANCE COMPANY POLICIES.**

> No insurance is afforded by Shelter Mutual Insurance Company or Shelter

General Insurance Company if payment of the premium is not received by the company by due date ... There is no grace period for late payment of premium ...

There is nothing misleading about the premium notice. It informs the insured that a premium is due and the consequences of not paying on time. The identification cards can only be meant to be valid if the premium is paid by the due date. That the identification cards accompany the premium notice, and so are an incident of the notice to renew although renewal may lapse because the premium notice is not heeded, is a fortuity of the law itself. Section 303.024, RSMo 1986, requires that a motorist have proof of liability insurance upon request. The failure to make proof has consequences. § 303.024.5; *Cillo v. Director of Revenue*, 782 S.W.2d 81 (Mo. App.1989). If an insurer waits until the premium is received to send the identification card, there would be a period of time where the insured would have no proof of insurance, and so be vulnerable to penalty. By sending the cards with the premium notice, the insured has proof of insurance if requested.

Any reliance on the coverage recitations on the identification card by the Flints was in any event not reasonable in view of their acknowledgement that the secretary from the Shelter office telephoned Mrs. Flint on December 15 to warn her of the dangers of driving without insurance. In addition, the Shelter vice-president had written the Flints on December 18 to advise them that the renewal premium had not been received and to give the matter their earliest attention so that their insurance "can be put in force again." These advisements were well in advance of January 4, 1990, the date of the collision.

■ The Flints argue also that they believed there was a 30 day grace period for payment because their previous insurance company had such a grace period. In addition to the fact that the premium notice states clearly that there was no grace period for late payment of premium, the accident occurred on January 4, 1990, which is more than 30 days after December 2, 1989, the date the premium was due. There was no evidence that anyone from Shelter told either of the Flints that there was a grace period. The Flints argue, cognately, that they should have been notified at least 30 days before cancellation or nonrenewal that Shelter would not renew the policy.

Indeed, the insurance policy had a clause that provided notice to the insured if the company decided to cancel or refuse to renew the policy, *except* where the cancellation or nonrenewal was at the request of the insured or *for nonpayment of premium*. That policy language merely rescripts § 379.118, RSMo Cum.Supp.1991. No notice was due the Flints from Shelter for nonrenewal due to nonpayment of premium. "Continued payment of premiums by an insured on or before their due date is necessary to continue the policy in force, and the duty of the insurance company to pay benefits under the policy depends upon whether the premiums were paid when due." *Hyten v. Cape Mut. Ins. Co.*, 663 S.W.2d 430, 431 (Mo.App.1983). *Grassham v. Farm Bureau Town & Country Ins. Co.*, 684 S.W.2d 892 (Mo.App.1984), argued by the Flints, contained no provision, as does the Shelter policy, about suspension of coverage between due date and payment date when the premium is not paid on time, and simply does not apply. When the Flints paid their premium on January 6, 1990, their insurance coverage was reinstated, but the accident occurred on January 4, 1990, during the lapse in coverage.

The trial court properly determined that "the uncontroverted facts clearly indicate that there was no automobile insurance coverage for the defendant Flints issued by [Shelter Mutual] on January 4th, 1990" and the summary judgment in favor of Shelter Mutual is sustained.

■ Finally, the Flints contend reversible error by refusal of the court to join Citizens–Jackson County Bank as a party to the action. They argue that since Shelter acknowledges that the coverage remained in effect as to the Bank until January 7, 1990, and the Bank as the loss payee and lienholder on the Flint's damaged ve-

hicle had demanded that Shelter honor the contract, the Bank had an interest in the subject matter of the suit and was necessary to its proper resolution.

Rule 52.04(a) governs:

RULE 52.04 JOINDER OF PERSONS NEEDED FOR JUST ADJUDICATION

**(a) Persons to be Joined if Feasible.** A person shall be joined in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant.

██ Thus, a party is necessary if complete relief cannot be accorded among those already parties. Our discussion already concludes that the rights of the Bank loss payee under the policy were separate and distinct from the named insured Flints. It was the interest of the Bank only that continued until January 7, 1990, after the interest and coverage of the Flints lapsed on December 2, 1990 for nonpayment of premium, long before the collision on January 4, 1990. There is no mention in the record on summary judgment that Shelter has ever denied the existence of coverage as to the interest of the loss payee Bank. Accordingly, the Flints cannot be prejudiced by the nonjoinder of the Bank.

██ A party is necessary who claims an interest relating to the subject of the action and will not be able to protect that interest without joinder. The Bank did not ask to be joined in the action for declaratory action: that was the initiative of the Flints. The Bank does not now ask simply because the coverage of its interest is not in doubt. Shelter has asked for information from the Bank in order to process its claim. Courts have dealt with the question as to whether a party is necessary to an action for declaratory judgment when the insurance company does not deny coverage to that party. The answer has been that it is not. *State ex rel. Emcasco Ins. Co. v. Rush,* 546 S.W.2d 188, 196[2] (Mo.App.1977). The issue before the court for declaratory judgment is whether or not the insurance policy covered the Flints on January 4, 1990. The Bank, whose coverage is not in question, can protect its interest without joinder in that action.

The summary judgment is affirmed.

All concur.