FEDERAL DEPOSIT INSURANCE COR-
PORATION, as Receiver for the First
National Bank in West Concord, Appel-
lee,

v.

ST. PAUL FIRE AND MARINE
INSURANCE COMPANY,
Appellant.

FEDERAL DEPOSIT INSURANCE COR-
PORATION, as Receiver for the First
National Bank in West Concord, Appel-
lant,

v.

Garry R. GORDINIER, Terry L. Myhre,
Estate of Richard C. Newlin; Koleen K.
Samek, as Personal Representative of
the Estate of Richard C. Newlin, Wil-
liam E. Smock, Appellees.

FEDERAL DEPOSIT INSURANCE COR-
PORATION, as Receiver for the First
National Bank in West Concord, Appel-
lant,

v.

ST. PAUL FIRE AND MARINE
INSURANCE COMPANY,
Appellee.

Nos. 92–1498, 92–1499.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 9, 1992.

Decided May 7, 1993.

Norman R. Carpenter, Minneapolis, MN,
argued, for appellant.

Manuel A. Palau, Washington, DC, argued
(Ann S. Duross, Asst. Gen. Counsel, and
Colleen B. Bombardier, Sr. Counsel, on the
brief), for appellee.

Before McMILLIAN, Circuit Judge,
FRIEDMAN,* Senior Circuit Judge, and
MORRIS SHEPPARD ARNOLD, Circuit
Judge.

* The Honorable Daniel M. Friedman, Senior Unit-
ed States Circuit Judge for the Federal Circuit, sitting by designation.

**156**

McMILLIAN, Circuit Judge.

The St. Paul Fire and Marine Insurance Company (St. Paul) appeals from a final judgment entered in the United States District Court for the District of Minnesota holding plaintiff Federal Deposit Insurance Corporation (FDIC) was entitled to a declaration of coverage and St. Paul was liable for the money damages under the terms of a directors and officers liability policy issued to the First National Bank (the bank) in West Concord, Minnesota. *Federal Deposit Ins. Corp. v. Gordinier*, 783 F.Supp. 1181 (D.Minn.1992) (*Gordinier*).

For reversal, St. Paul argues the district court erred in holding (1) the bank gave sufficient notice under the terms of St. Paul's "claims made" policy to invoke coverage and (2) St. Paul's policy provided coverage for intentional and deliberate acts of insiders. For the reasons discussed below, we reverse the judgment of the district court and remand the case to the district court with directions to enter judgment for St. Paul.

## I.

This is another case involving insurance and the clean up of a failed financial institution. The bank was declared insolvent on March 5, 1987, by the Office of the Comptroller of the Currency (OCC), which ordered the bank closed, took possession of its business and property and appointed the FDIC receiver of the bank. FDIC sought to recover the bank's bad loan losses from the bank's former directors and their directors and officers ("D & O") liability insurer, St. Paul.

In 1983 the bank applied for and was issued a D & O policy by St. Paul, effective from April 5, 1983 to April 5, 1986. This policy was later extended to June 18, 1986. The D & O policy is characterized as a discovery or "claims made" policy—coverage was limited to claims made during the policy period for losses caused by "any negligent act, any error, any omission, or any breach of duty." The policy required as a prerequisite of coverage that written notice of claims or suits by the insured be given to St. Paul within the policy period. The policy limit was $1 million.

The bank was sold in 1984 to a bank holding company formed by Terry L. Myhre, Richard E. Newlin, William D. Newlin, Joel F. Punke, and John Kwok–Chung Ma. The shareholders of the bank holding company were the directors of the bank holding company.

During this period, the bank received critical reviews from the OCC about its lending practices. The OCC's first review, in October 1984, was critical of the bank management concerning administration of problem loans. Nevertheless, during the first six (6) months of 1985, the bank approved additional loans, including additional extensions of credit (credit overlines) to six (6) long-time bank customers in excess of the bank's specified limits for loans to one borrower.

In September 1985 the OCC examined the bank again and was more critical of bank management. The report specifically referred to the six (6) credit overlines as willful violations of lending limit regulations which could result in personal liability of the directors. The report proposed civil money penalties for lending limit violations and preferential insider transactions. The OCC requested the bank execute a cease and desist order with respect to certain bank management practices; however, no cease and desist agreement was ever signed.

In March 1986, several weeks before the bank's D & O policy was set to expire, several bank officers completed and submitted a renewal application to St. Paul. It is this renewal application, and the information contained in it, that is the center of this case.

The renewal application required the bank to answer questions about certain conditions which would be reviewed in a bank examination and asked the bank to supply specific details. The notice issue centers on question 7, several parts of which the bank answered affirmatively. Specifically, the bank checked the "yes" boxes for part B, "Extensions of credit which exceed the legal lending limit," part C, "Assets subject to classification as substandard, doubtful or loss, wherein the total of such assets exceed 25% of capital,"

and part E, "Significant violations of laws and regulations."[1]

Question 7 further required that if any part of the answer was "yes," then the bank should provide details and current status. For this detailed information, the bank answered "Six credit overlines; 1 now paid out in full, 3 are farm credits that FHA guarantees fell through on, 2 other overlines are commercial loans." No other details were given.

The renewal application contained other questions concerning the bank's knowledge or awareness of any claims or acts which might give rise to a claim. Three questions specifically asked if the bank knew of (A) any pending suits, (B) any claim against any person as a director of officer or employee, and (C) whether any director, officer or employee knew of any act, error or omission which might give rise to a claim under the policy.[2] The bank responded "No" to each of these questions on the renewal application.

St. Paul, after review of the renewal application and discussions with bank officials, decided not to renew the policy. The OCC issued another report, on June 30, 1986, which was again critical of the bank management and recommended that certain directors be replaced. From then on the situation at the bank worsened until in March 1987, the OCC determined that the bank was insolvent, closed the bank and appointed the FDIC as receiver. The FDIC liquidated the bank.

The FDIC sought recovery from several former bank directors for loan losses, filing suit in federal district court in January 1989, alleging several various theories of personal liability including violation of statutory lending limits, preferential extensions of credit, and breach of fiduciary duty. The former bank director defendants and the FDIC notified St. Paul about the lawsuit. St. Paul answered that there was no coverage because the D & O policy was a "claims made" policy and there had been no notice of a claim, under the terms of the policy, during the coverage period.

In October 1989 the FDIC filed a declaratory judgment action against St. Paul seeking to establish coverage for the bank's losses under the D & O policy. The FDIC alleged that the information St. Paul received during the renewal application process constituted "effective notice" of the claims against the directors. St. Paul asserted that no notice had been given and that the policy did not provide indemnity for intentional or illegal acts. The case below involved a host of related sideshows which are not relevant for the present case, but are thoroughly explained in the district court opinion.[3]

The district court consolidated the liability and coverage issues, finding as a matter of law, that the answer to question 7 in the renewal application provided St. Paul the

---

1. Question 7 in its entirety reads:
   7. During the last two years, has any Director or Officer been alerted to any of the following conditions:
   A. Concentration of credits which warrant reduction or correction.
   B. Extensions of credit which exceed the legal lending limit.
   C. Assets subject to classification as substandard, doubtful or loss, wherein the total of such assets exceed 25% of capital.
   D. Problems involving extensions of credit to Directors, Officers or their related interests.
   E. Significant violations of laws and regulations.
   If yes, provide details with current status.

2. The specific language of the policy states:
   15. Have there been during the last three years, or are there now pending, any suits or claims against this institution or its subsidiaries? If yes, provide full details.
   16. Has there been during the last three years, or is there now pending, any claim against any person proposed for this insurance in their capacity as either Director, Officer or employee (past or present)? If yes, provide full details.
   17. Does any Director, Officer or employee have knowledge or information of any act, error or omission which might give rise to a claim under the proposed policy? If yes, provide details.

3. Several of the former bank directors and officers subsequently filed for bankruptcy and reached a settlement with the FDIC. St. Paul argues that these settlements breached the insured' duty of cooperation. The district court rejected this argument and found that the settlements were valid under *Miller v. Shugart*, 316 N.W.2d 729 (Minn.1982) (defining circumstances under which insured can settle liability claim without breach of cooperation clause). *Gordinier*, 783 F.Supp. at 1189–92.

requisite written notice of potential claims required by the terms of the D & O policy. *Gordinier,* 783 F.Supp. at 1180. The scope of the notice was subsequently limited to the 5 credit overlines referred to in the answer to question 7. *Id.* at 1190. The district court also found that the policy did not exclude coverage for intentional or illegal acts but covered losses incurred from extensions of credit in excess of the bank's lending limits, regardless of whether it was negligent or intentional. *Id.* The district court entered judgment in favor of the FDIC and against St. Paul in the amount of the losses for the 5 credit overlines. *Id.* at 1193–94.[4]

St. Paul has appealed the district court judgment with respect to the issue of effective notice, and the FDIC has cross-appealed with respect to the measure of damages.

## II.

The critical issue in this case is whether the district court erred in determining that, as a matter of law, the bank's renewal application gave St. Paul effective notice required in the D & O "claims made" policy. By the terms of the D & O policy, the bank must provide St. Paul written notice of claims, suits or acts within the policy period. Because the renewal application was received during the policy period, the FDIC relies on the information provided in the renewal application as effective notice of possible claims.

▇▇▇ Both parties agreed that the D & O policy at issue is a "claims made" policy, as opposed to an "occurrence policy," and that St. Paul is responsible for claims made during the term of the policy or resulting from events or circumstances that could lead to a claim. *Burns v. International Insurance Co.,* 929 F.2d 1422, 1424 (9th Cir.1991) (*Burns*). However, under "claims made" policies coverage usually extends only to "claims that were made and *reported.*" *United States v. A.C. Strip,* 868 F.2d 181, 187 (6th Cir.1989) (emphasis added). It is clear that "claims made" policies place special reliance on notice. In fact, the notice provision of a "claims made" policy is just as important

to coverage as the requirement that the claim be asserted during the policy period. If the insured does not give notice within the contractually required time period, there is simply no coverage under the policy. *City of Harrisburg v. International Surplus Lines Insurance Co.,* 596 F.Supp. 954, 960 (M.D.Pa. 1984) (*City of Harrisburg*), *aff'd,* 770 F.2d 1067 (3d Cir.1985) (table). Under a "claims made" policy, the insurer disclaims the risk of failure on the part of its insured to give it timely notice. *Esmailzadeh v. Johnson & Speakman,* 869 F.2d 422, 425 (8th Cir.1989).

Notice in a "claims made" policy provides the insurer with the knowledge that after a certain date the insurer is no longer liable under the policy, and accordingly allows the insurer to more accurately fix its reserves for future liabilities and compute premiums with greater certainty. *City of Harrisburg,* 596 F.Supp. at 960. Such a policy reduces the potential exposure of the insurer, thus reducing the policy cost to the insured. *Burns,* 929 F.2d at 1424.

Because "claims made" policies refers to a claim made or suit brought during the policy period, an incentive might be created for the insured to force possible claims into actual claims or suits to be covered. Yet "claims made" policies permit the reporting of acts not yet in litigation. This provides additional protection for the insured, because coverage could extend to a suit not brought until long after the policy has expired, as long as the insured provides notice to the insured of potential claims. Yet this highlights the reciprocal responsibility of the insured to report all acts and occurrences that could become future claims. Thus, the notice provision requirement sets the parameters of the coverage under the policy.

## III.

▇▇▇ St. Paul argues that the district court erred in holding that the information contained in the bank's renewal application constituted effective notice under the terms of the D & O policy. St. Paul first argues that

---

4. The district court determined that the damages for the 5 overlines (the 6th overline was paid off) was $676,271.78, $441,091.60 principal, plus $226,623.40 prejudgment interest, plus $83.89 per day postjudgment interest. *Gordinier,* 783 F.Supp. at 1193–94.

the bank's renewal application was intended solely to renew their insurance and was not intended to be notice of any claims. In addition, St. Paul argues that in answer to the specific questions in the renewal application asking if there were occurrences to report, questions 15, 16 and 17, the bank responded "No." According to St. Paul, effective notice in a "claims made" policy must be specific, in writing, and given in a context which is calculated to advise the insurer of the facts. St. Paul argues the information provided in the renewal application satisfied none of these requirements.

The FDIC argues that effective notice was given to St. Paul, within the policy period, in the bank's renewal application and that the information was sufficient to prompt St. Paul's subsequent investigation and ultimate decision not to renew the bank's D & O policy. The FDIC argues that the bank's answer to question 7, listing the six credit overlines, was sufficiently specific, written notice of acts or occurrences under the terms of the "claims made" policy. Additionally, the FDIC argues that the bank's written renewal application fulfilled all the requirements for notice of occurrences under the conditions of the D & O policy.[5] The clear language of the D & O policy, the FDIC argues, only required that notice be in writing and that it be given to St. Paul as soon as practicable. The FDIC argues the D & O policy did not require that the notice contain certain information, or that the bank intend the written document to be a notice of occurrence.

We agree with St. Paul that the renewal application did not constitute effective notice of claims as required by the D & O policy. Therefore, the district court erred in holding the D & O policy covered the claims made by the FDIC.

In *American Casualty Co. v. Federal Deposit Ins. Corp.*, 944 F.2d 455 (8th Cir.1991), this court addressed a very similar factual situation concerning a D & O policy, a failed bank and the FDIC claims against former directors. The court held that the information gained in the renewal process by the insurer did not constitute effective notice to invoke coverage under the "claims made" policy. *Id.* at 460.

> The communications between [the bank officer] and American Casualty do not conform to the 1981 policy's requirements. Notice of occurrences that might lead to claims had to be specific and in writing. All of this information was general, most of it was communicated orally, and all the while [the bank officer] was telling American Casualty that the Bank was in no danger. We decline to hold that the information American Casualty received during the application process was effective notice to it of potential claims.

*Id.* Cf. *California Union Insurance v. American Diversified Savings Bank*, 914 F.2d 1271, 1276 (9th Cir.1990) (communications from regulating agencies to a savings bank did not constitute "claims made" within the meaning of the insurance policies), *cert. denied*, 498 U.S. 1088, 111 S.Ct. 966, 112 L.Ed.2d 1052 (1991).

We think that the rationale of these cases is controlling in the present case. First, the bank's renewal application did not indicate any occurrences under the terms of the D & O policy. In fact, the bank answered negatively to specific questions (questions 15, 16 and 17) concerning occurrences in their renewal application to St. Paul.

Secondly, nothing in the renewal application itself effectively described a claim or potential claim within the meaning of the policy. The information provided by the bank in response to question 7 was not effective notice of a claim or potential claim because it was not specific enough and did not alert St. Paul that any claim could have been asserted. Additionally, the credit overlines mentioned in the bank's response to question 7 are not necessarily negligent and would not give St. Paul notice of potential claims. Moreover, as noted above, the bank also

---

5. The policy at § 7 of the "Conditions" section, sets forth the requirements for notice of occurrences:

Notice of Claim or Suit

In the event of any occurrence likely to involve the indemnity provided under this Policy, written notice shall be given by or on behalf of the Insured to the company or any of its authorized agents as soon as practicable.

answered negatively to specific questions concerning bank officers and directors' knowledge of errors or omission which might give rise to a claim. No written information imparted in the renewal application gave St. Paul effective notice as to what claims could be asserted. Notice that would cause one to investigate a renewal for insurance must surely be different than notice to investigate potential claims under a "claims made" policy. Thus, we hold the bank did not provide effective notice to St. Paul of claims or potential claims under the terms of the D & O policy. Because there was no effective notice, there is no coverage.

In light of our disposition of the notice issue, we do not reach the other issues raised in the appeal and we dismiss the FDIC's cross-appeal as moot.

Accordingly, the judgment of the district court is reversed, and the cause is remanded to the district court with directions to enter judgment in favor of St. Paul.