INSURANCE PLACEMENTS,
INC., Appellant,

v.

UTICA MUTUAL INSURANCE COM-
PANY and the Home Insurance
Company, Respondents.

No. 67570.

Missouri Court of Appeals,
Eastern District,
Division Two.

March 5, 1996.

J. Michael Ponder, John L. Oliver, Jr., Cape Girardeau, for appellant.

Cynthia A. Masterson, Edward S. Meyer, John J. Horgan, St. Louis, for respondents.

CRAHAN, Presiding Judge.

Insurance Placements, Inc. ("Plaintiff") appeals following the entry of separate summary judgments in favor of Utica Mutual Insurance Company ("Utica") and The Home Insurance Company ("Home") in its declaratory judgment action seeking to establish coverage under separate errors and omissions policies issued by the two insurers. Although Plaintiff's brief alleges error with respect to each judgment, we find that the attempted appeal of the judgment against Utica is not properly before us and dismiss that portion of the appeal. We affirm the judgment in favor of Home.

Plaintiff is an insurance agency and brokerage which obtains insurance for its customers. To protect itself from liability for errors and omissions in procuring insurance for its customers, Plaintiff purchased professional liability errors and omissions policies from Utica covering the period of June 22, 1979 through August 7, 1984 and successive one year periods from September 11, 1985 through the time of filing the instant suit. Plaintiff purchased a similar professional liability errors and omissions policy from Home, covering the intervening period of August 7, 1984 through September 11, 1985. Although the policies issued by Utica and Home are not identical, all of the policies at issue are "claims made" policies, defining coverage in terms of negligent acts or omissions discovered and reported to the insurer during the coverage period set forth in the policy.

In June, 1984, Plaintiff procured, on behalf of its client, Jones Mayer Architecture, Inc. ("Jones Mayer"), professional liability errors and omissions insurance from Fremont Indemnity Insurance Company ("Fremont"). This policy replaced Jones Mayer's previous errors and omissions coverage with CNA Insurance Company ("CNA").

In August, 1984, Jones Mayer was sued by a client seeking damages arising out of an allegedly defective roof designed by Jones Mayer. Due to Plaintiff's error, there was a gap in Jones Mayer's coverage and neither the CNA nor the Fremont policies covered the claim against Jones Mayer. CNA and Fremont formally notified Jones Mayer they were denying coverage on October 3 and October 12, 1984, respectively. A judgment for damages in the amount of $284,813.60 was later entered against Jones Mayer.

In March, 1992, Jones Mayer filed suit against Plaintiff alleging negligence in failing to procure insurance for Jones Mayer that would have covered the judgment against it. This action resulted in a consent judgment for $284,813.60 in favor of Jones Mayer and against Plaintiff. Jones Mayer agreed, however, not to execute on the judgment beyond any insurance proceeds available through Plaintiff's errors and omissions policies.

In August, 1992, Plaintiff filed the instant suit against Home and Utica seeking a declaratory judgment seeking to establish its rights, if any, under their respective errors and omissions policies. Each insurer separately moved for summary judgment on different grounds. Both motions were granted in separate orders entered on December 1, 1994. Plaintiff filed a notice of appeal on January 10, 1995, attaching only the judgment against Home. The notice of appeal contained no mention of the separate judgment in favor of Utica. In its brief, however, Plaintiff also asserted Points Relied On challenging both the summary judgment in favor of Utica and the summary judgment in favor of Home. Utica moved to dismiss the appeal

against it and that motion was ultimately taken with the case. We will first address Plaintiff's points pertaining to the summary judgment in favor of Home and then address the merits of Utica's motion.

■ Our review of the action of the trial court in sustaining a motion for summary judgment is essentially de novo. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The criteria on appeal are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion for summary judgment initially. *Id.* The movant bears the burden of establishing a legal right to judgment and the absence of any genuine issue of material fact required to support that judgment. *Id.* at 378. Where the movant is a "defending party" the movant "may establish a right to judgment by showing (1) facts which negate *any one* of the claimant's elements facts, (2) that the non-movant, after an adequate period of discovery, has not been able to produce evidence sufficient to allow the finder of fact to find the existence of *any one* of the claimant's elements, or (3) that there is no genuine dispute as to the existence of *each* of the facts necessary to support the movant's properly pleaded affirmative defense." *Id.* at 381. We consider the record in the light most favorable to the non-moving party and afford that party the benefit of all favorable inferences which may be drawn from the evidence. *Id.* at 376.

In support of its amended motion for summary judgment, Home contended that the policy, the affidavit of its Specialty Lines Coverage director, the deposition of Plaintiff's president and other materials submitted in support of its motion established that Plaintiff had failed to give notice to Home of the Jones Mayer claim during the term of the policy, as required by the express terms of the policy, and thus there was no coverage for the claim.

The Home policy defined the coverage available under the policy as follows:

Coverage: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages *because of any claims first made against the insured and reported to the company during the policy period* or extended reporting period [1] if applicable. (emphasis added).

Based on this policy language, Home maintained that in order for Plaintiff to be entitled to judgment against Home it would be incumbent on Plaintiff to establish that the Jones Mayer claim was first made against it during the policy period *and* that it reported the claim to Home during the policy period.

Home asserted that the first notice it received of the claim against Plaintiff by Jones Mayer was the summons issued and served upon it in this suit, well after the expiration of the policy period. In support of that assertion, Home submitted the affidavit of Ron Barta, Home's Specialty Lines Coverage Director. Mr. Barta attested that in the ordinary course of business, any and all claims presented under its policy are forwarded to Home's offices, logged onto Home's [computer] system and documented in claim files. Mr. Barta stated that he searched the system and reviewed the claim files for any report of Plaintiff's claim and that there were no claims of any kind against that policy between August 7, 1984 and September 11, 1985 (the policy period). Further, Mr. Barta attested that Home was first made aware of a claim under the policy when Plaintiff filed its declaratory judgment action and Home received notice of the action from the Missouri Insurance Commission. Mr. Barta also verified that the reason Home denied coverage was that Plaintiff never placed Home on notice of the claim or potential claim of Jones Mayer.

Home also submitted a handwritten statement signed by Plaintiff's president, Steven Krasny, dated August 16, 1988, reciting that a loss notice to Home was prepared in October, 1984 in anticipation of a claim based on the Jones Mayer situation but the claim was not sent to Home based on Mr. Krasny's

---

1. There was no contention in the trial court or this court that the "extended reporting period" mentioned in this provision had any significance in the context of this case. We will therefore ignore that term for purposes of our analysis.

understanding that the matter had been dropped.

Home acknowledged that in his deposition Mr. Krasny testified that the signed statement is incorrect to the extent that it states a notice of claim was not sent to Home. In his deposition, Mr. Krasny stated that, to the best of his knowledge, the notice [2] was sent although he could not be sure. Mr. Krasny admitted he neither prepared nor reviewed the notice and could not verify one way or the other if the notice was sent. Mr. Krasny assumed that if the notice was prepared, it was probably sent out, although he did not know at the time if it was sent out or not. He believed a co-worker, Ms. Gimpel, forwarded the notice.

Mr. Krasny admitted that the written notice discussed above was the only written notice of the potential claim by Jones Mayer prepared by Plaintiff. He was unaware of any oral notice and did not place the written notice in the mail or see it go out. Nor was he aware of anyone at Plaintiff's offices receiving any written acknowledgment or receipt for any notice of claim.

In response to Home's amended motion for summary judgment, Plaintiff submitted an additional affidavit by Mr. Krasny, again acknowledging that he did not personally place the alleged written notice of claim in the mail. However, Mr. Krasny stated that the office had a settled and customary practice for the regular and systematic mailing of documents, which would at times be voluminous and consist of claim forms and correspondence between Plaintiff, its insureds and insurers. Pursuant to these procedures, Mr. Krasny would direct an employee to prepare claim forms and review and sign them where necessary. When signed, the secretary would prepare an envelope and deposit the document in the mail with proper postage. Mr. Krasny stated that he "believe[d]" this procedure was followed with respect to the alleged written notice and noted that his signature appeared at the bottom of the [largely blank] Accord Notice Form. Mr. Krasny further opined that Home must have received the form because it failed to renew the policy at the next annual renewal date. Based on his experience as a broker, Mr. Krasny felt that the only reason an insurance company such as Home would not renew a policy would be loss experience—*i.e.*, claims made against the policy.

▮ In its first point on appeal, Plaintiff asserts that Mr. Krasny's affidavit was sufficient to raise a genuine issue of material fact as to whether Home was given written notice on or about October 16, 1984, within the policy period. There is a presumption that a letter duly mailed has been received by the addressee. *Shelter Mut. Ins. Co. v. Flint,* 837 S.W.2d 524, 528 (Mo.App.1992). The presumption is rebuttable, and when proof of proper mailing is adduced, it may be rebutted by evidence it was not, in fact, received. *Williams v. Northeast Mut. Ins. Ass'n,* 72 S.W.2d 166, 167 (Mo.App.1934). Evidence of non-receipt, however, does not nullify the presumption but leaves the question for the determination of the jury under all of the facts and circumstances of the case. Thus, the issue is whether the record is sufficient to support a finding that the notice was, in fact, mailed, thus triggering the presumption and raising a jury question as to whether notice was received by Home.

▮ It is undisputed that Plaintiff offered no direct evidence that notice was ever mailed to Home. However, Plaintiff urges that Mr. Krasny's affidavit testimony that Plaintiff had a regular and customary practice with respect to its regular and systematic mailings is sufficient to raise a genuine issue of material fact as to the mailing of notice to Home despite the absence of direct evidence that the notice was mailed. We disagree.

▮ It is true that, when the customary volume of mail is large so that direct proof that a particular letter was mailed is impractical or not feasible, evidence of the settled custom and usage of the sender in the regular and systematic transaction of its business may be sufficient to give rise to a presump-

---

**2.** The "notice" refers to a cover letter dated October 16, 1984 and attached Accord Notice Form addressed to "Barb" at Home describing the potential errors and omissions claim of Jones Mayer. This document was produced by Plaintiff in discovery.

tion of receipt by the addressee. *Shelter Mut. Ins. Co. v. Flint*, 837 S.W.2d 524, 528 (Mo.App.1992). As the cases cited by Plaintiff suggest, this doctrine is ordinarily invoked to establish that a document deposited into a firm's regular and established process for the handling of mail was, in fact, duly mailed in accordance with such process, thus triggering the presumption of receipt by the addressee. *See e.g., Armour & Co. v. American Automobile Ins. Co.*, 336 Mo. 551, 80 S.W.2d 685 (1935); *First Nat'l Bank v. Mid–Century Ins. Co.*, 559 S.W.2d 50 (Mo.App. 1977). In this case, however, Plaintiff is attempting to invoke the doctrine to establish *both* that the document was placed into the firm's established system for mailing *and* that the system was regularly followed, so as to give rise to the presumption that it was followed in this case.

Home urges that Mr. Krasny's affidavit is insufficient to satisfy the requirement consistently required by the case law that the sender produce testimony of a witness with at least some duty, responsibility and participation in the mailing process to testify as to the customary office mailing practice. *See, e.g., Peirson–Lathrop Grain Co. v. Barker*, 223 S.W. 941, 944 (Mo.App.1920); *Hardin Grain Co. v. Missouri Pacific Railway Co.*, 120 Mo.App. 203, 96 S.W. 681, 682 (1906); *Miller v. John Hancock Mut. Life Ins. Co.*, 155 S.W.2d 324, 329 (Mo.App.1941); *Shelter Mut. Ins. Co. v. Flint*, 837 S.W.2d at 528; *Lake St. Louis Community Assn. v. Ringwald*, 652 S.W.2d 158, 160 (Mo.App.1983); *Price v. Ford Motor Credit Co.*, 530 S.W.2d 249, 252 (Mo.App.1975). Home maintains that nothing in Mr. Krasny's affidavit suggests that he had any personal responsibility for the firm's mailing procedures or was even familiar with the procedures followed for the affixing of proper postage and deposit in the U.S. Mail.[3]

We find it unnecessary to decide whether Mr. Krasny's affidavit was competent to establish the regularity of Plaintiff's mailing procedures generally because, even assuming it was, Mr. Krasny's deposition testimony squarely refutes the existence of any regular and systematic procedure which would support the inference that the notice of claim was ever placed in the firm's mailing system in the first place. Specifically, Mr. Krasny testified that this was the first and only occasion that Plaintiff had any reason to assert a claim under its errors and omissions coverage. Thus, there could be no regular and systematic procedure for preparing such claims and putting them in the mailing system for transmission to the addressee. Moreover, even in the absence of Mr. Krasny's admission, the decision whether a given situation warrants making a claim is inherently a judgment call that must necessarily be made on a case-by-case basis. Because the decision to make a claim and place it in the mail inherently involves the exercise of discretion in every case, the fact that a decision was made and a claim put in the mail cannot be established by reference to the "regular and systematic procedure" doctrine. The conceptual underpinning of that doctrine plainly contemplates that the action to be established is one that involved *no discretion* and is therefore performed in precisely the same way every time. This is what justifies the inference that, although no one can be expected to recall the precise transaction at issue, it is reasonable to presume it was handled the same way in this instance.

*First Nat'l Bank v. Mid–Century Ins. Co., supra*, illustrates the proper application of the doctrine and the reason why it cannot properly be invoked on the basis of Plaintiff's proof in this case. In *First Nat'l Bank*, a mortgagee claimed it had not been given notice of cancellation of insurance coverage on the insured vehicle. To establish that notice had in fact been mailed, the insurer presented the testimony of its policy service manager, who testified that its computer was programmed to scan its records within a specified period following the premium due date. If no premium had been received, the computer automatically and simultaneously prepared notice of cancellation to the in-

---

**3.** Home points out that the copy of the alleged notice itself indicates that the cover letter was prepared by yet another employee, Mr. Voellinger. Plaintiff offered no evidence from Mr. Voellinger or from Ms. Gimpel, the employee allegedly responsible for depositing firm mailings in the U.S. Mail, that Mr. Voellinger gave the notice to anyone for mailing. Nor did Plaintiff argue that such testimony would be forthcoming if given additional time for discovery.

sured, the agent and any mortgagee involved. These form notices were printed simultaneously and placed in the mail addressed to the insured, etc., at the address shown in the policy. Other evidence established that both the insured and the agent received their copies of the notice of cancellation. This was held sufficient to create an issue of fact as to whether the notice to the mortgagee was mailed in this instance, which would in turn trigger the presumption of receipt by the mortgagee. 559 S.W.2d at 51–52.

In contrast, as noted above, Mr. Krasny testified in this case that this was the first and only occasion Plaintiff had any reason to make a claim under its errors and omissions coverage. Thus, Plaintiff had no regular and systematic procedure for preparing or mailing notices of claims. The decision to give such notice is inherently discretionary and thus is not susceptible to regular and systematic procedures. Thus, it was incumbent on Plaintiff to produce evidence from someone with personal knowledge that a notice was prepared and placed in the mail in this instance. Mr. Krasney's deposition establishes that he had no personal knowledge of whether notice was sent in this instance [4] and Plaintiff offered no other evidence to support such a finding. Thus, in view of Home's evidence that no notice was ever received, Plaintiff failed to raise a genuine issue of material fact as to its failure to give Home notice of the claim within the policy period.[5] Home was therefore entitled to summary judgment as a matter of law.

■ In a subpoint, Plaintiff alternatively urges that summary judgment should not have been granted because Home did not prove that it was prejudiced by the lack of notice. The cases cited in support of this

contention all involve "occurrence" policies. As noted above, Home's policy is a "claims made" policy. There is no requirement that an insurance company prove it was prejudiced to avoid coverage due to lack of notice under a claims made policy. *Continental Casualty Co. v. Maxwell*, 799 S.W.2d 882, 886–87 (Mo.App.1990). This is because, unlike an occurrence policy in which coverage is triggered by the occurrence of a negligent act or omission during the coverage period, a claims made policy provides coverage when the act or omission is discovered and brought to the attention of the insurer, regardless of when the act or omission occurred. *Id.* Because the reporting requirement helps define the scope of coverage under a claims made policy, to excuse a delay in notice beyond the policy period would alter a basic term of the insurance contract. *See Esmailzadeh v. Johnson & Speakman*, 869 F.2d 422, 424 (8th Cir.1989); *FDIC v. Saint Paul Fire & Marine Ins. Co.*, 993 F.2d 155, 158 (8th Cir. 1993). Contrary to Plaintiff's contention, Home was not required to prove prejudice by reason of Plaintiff's failure to give notice during the coverage period. We therefore affirm the judgment in favor of Home.

We now turn to Utica's motion to dismiss Plaintiff's appeal of the separate summary judgment in favor of Utica. Utica urges that Plaintiff failed to designate this judgment in its notice of appeal as required by Rule 81.08(a), which provides:

(a) Notice of Appeal. The notice of appeal shall specify the parties taking the appeal, *the judgment or order appealed from,* the court to which the appeal is taken, and if the appeal is to the Supreme Court the ground or grounds on which the jurisdiction of the Supreme Court is based. For

---

4. Mr. Krasny admitted that his belief that the document had been put into the mailing system was based on the fact that a copy was later discovered in the firm's files. The mere existence of a notice in Plaintiff's file is not evidence that it was mailed. *See Eastin v. Franklin*, 806 S.W.2d 57, 61 (Mo.App.1991) (existence of trial notice letter in court file not evidence that it was mailed to all attorneys). Indeed, Mr. Krasny's signed statement to Utica's adjuster that he assumed the claim had been withdrawn suggests an ample reason why the notice might have been prepared but not mailed. Although Mr. Krasny later recanted the accuracy of his statement that

the notice was not mailed, he never professed any personal knowledge that the notice *was* mailed.

5. Plaintiff makes no argument on appeal that Mr. Krasny's opinion that Home would not have declined to renew unless it had received notice of a claim is sufficient to create a genuine issue of material fact. Inasmuch as our review is *de novo*, we hold that it is not. Whether Home received notice is purely a question of fact and is not a proper subject of "expert" testimony.

this purpose, appellant shall utilize Civil Procedure Form No. 8–A on appeals to the Supreme Court and Civil Procedure Form 8–B on appeals to the Missouri Court of Appeals. (emphasis added).

Plaintiff filed its notice of appeal with the trial court utilizing Form 8–B on January 10, 1995. The appellant is identified as Insurance Placements Inc. and the respondent is identified as The Home Insurance Company. The block entitled "BRIEF DESCRIPTION OF CASE" contains the following:

Declaratory judgment to declare errors and omissions liability insurance coverage. Summary judgment based on lack of notice, but without any evidence from The Home of prejudice.

The only judgment attached to the notice of appeal is the summary judgment in favor of Home. The Memorandum of the Clerk appearing on the back of Form 8–B and the circuit court minutes indicate that notice of the appeal was sent only to counsel for Home. Plaintiff's Rule 300 Supplement [6], also filed in the trial court on January 10, 1995, contains the following:

1. *Brief Description of the Case.* Insurance Placements, Inc. filed a declaratory judgment action to obtain declaration of errors and omissions coverage to provide it coverage for a case filed against it, *Jones Mayer, Inc. v. Krasny*, in which judgment had been entered against Krasny and appellants.

The Home Insurance Company filed summary judgment alleging a lack of notice which was sustained.

2. A copy of the order is attached.

The only judgment or order attached is the summary judgment in favor of Home. Plaintiff, Utica and Home are listed as "parties to the case in the trial court." The notice of appeal and Rule 300 supplement were filed in this court on January 17, 1995. The following day, our Deputy Clerk sent a form notice to Plaintiff's counsel acknowledging receipt and an additional form notice indicating that a copy of the motion for new trial, if filed, and a listing of the issues expected to be raised on appeal required by Eastern District Special Rule 300 had not been received. An additional notice of Plaintiff's failure to comply was sent on February 6, 1995, warning that the appeal would be dismissed fifteen days later unless arrangements were made to correct the defect. On February 22, 1995, this court received and filed a facsimile transmission from Plaintiff's counsel setting forth a list of issues. One of the issues identified pertained to the propriety of summary judgment in favor of Utica (although not the issue urged on appeal) and the other pertained to the summary judgment against Home. There is no indication that this document was served upon counsel for Utica or Home.

In its motion to dismiss, Utica noted that Plaintiff had filed a brief naming Utica as a respondent (Plaintiff's brief was filed on June 23, 1995) but alleged that, due to defects in the notice of appeal, Utica had never been legally notified of the appeal. Specifically, Utica urged that Plaintiff did not specify the judgment in favor of Utica as a judgment or order appealed from as required by Rule 81.08(a). Further, Utica urged that Plaintiff (1) had not named Utica as a respondent in the notice of appeal, (2) clearly and unambiguously indicated in the notice of appeal the judgment appealed from was the judgment in favor of Home, (3) failed to serve the notice of appeal on Utica as required by Rule 81.08(d), and (4) failed to request a special

**6.** In addition to the requirements of Rule 81.08(a) and Form 8–B, Rule 300 of the Eastern District Court of Appeals Special Rules requires that the following be filed as a supplement to the notice of appeal:

(1) a brief statement or description of the case, including any monetary awards, not to exceed one typewritten page;

(2) a copy of the judgment or award appealed from;

(3) a copy of the motion for a new trial, if filed, and a listing of the issues expected to be raised on appeal;

(4) a statement as to whether the record on appeal will be composed of the legal file and a transcript or the legal file only;

(5) a complete listing of all parties to the case in the trial court or before the administrative agency and the name of the law firm, attorneys, or attorney representing each of the parties in the trial court or before the administrative agency and on appeal.

order to file late notice of appeal pursuant to Rule 81.07(a).

In support of its motion, Utica cites and relies on *Erickson v. Pulitzer Publishing Co.*, 797 S.W.2d 853, 858 (Mo.App.1990); *Green Hills Production Credit Ass'n v. R & M Porter Farms, Inc.*, 716 S.W.2d 296, 299–300 (Mo.App.1986); and *Donnell v. Vigus Quarries, Inc.*, 489 S.W.2d 223, 224 (Mo.App.1972). In *Erickson*, the appellant's notice of appeal stated that he was appealing from a summary judgment in favor of Pulitzer and attached a copy of that judgment. Later, in the supplement required by our local rules, the appellant stated he expected to raise both errors stemming from an earlier judgment granting Pulitzer's motion to dismiss several counts of the petition and errors in granting Pulitzer's motion for summary judgment on the remaining count. Pulitzer moved to dismiss the appeal as to the dismissed counts. Appellant moved for leave to file the order of dismissal out of time, which was granted. Later appellant sought leave to amend his notice of appeal to include the order of dismissal. We held that review was limited to the judgment specified in the original notice of appeal. *Erickson*, 797 S.W.2d at 858. Further, appellant's failure to seek leave to amend the notice of appeal until more than six months after the judgment became final precluded relief pursuant to Rule 81.07(a). Likewise in *Green Hills* and *Donnell*, review on appeal was limited to the judgment or order specified in the notice of appeal. *Green Hills*, 716 S.W.2d at 299–300; *Donnell*, 489 S.W.2d at 224. *See also Morton v. Hearst Corp.*, 779 S.W.2d 268, 271 (Mo.App.1989) (no review of dismissal of claim not mentioned in notice of appeal); *Sutton v. Schwartz*, 808 S.W.2d 15, 23 (Mo. App.1991) (no review of separate order denying claim for attorney's fees not mentioned in notice of appeal).

Plaintiff does not dispute that it failed to comply with Rule 81.08(a). However, Plaintiff urges that the formal averments of the notice of appeal are not jurisdictional but are to be liberally construed in order to permit appellate review so long as the opposing party is not misled to his irreparable harm. In support of this contention, Plaintiff relies on *Weller v. Hayes Truck Lines*, 355 Mo. 695, 197 S.W.2d 657, 660 (banc 1946); *Allison v. Sverdrup & Parcel and Associates, Inc.*, 738 S.W.2d 440 (Mo.App.1987); and *Williams v. MFA Mut. Ins. Co.*, 660 S.W.2d 437, 439 (Mo.App.1983). None of these cases are controlling in the circumstances presented here.

In *Weller*, appellant's notice of appeal was deficient in that it specified the order overruling appellant's motion for new trial as the judgment appealed from instead of the judgment to which the motion for new trial had been directed. An order overruling a motion for new trial is not an appealable order. *Weller*, 197 S.W.2d at 660. The court noted, however, that there was only one appealable judgment issued in the case, which was the subject of the motion for new trial. Thus, the court found it obvious that the judgment which gave rise to the motion was the judgment appellant was seeking to appeal. *Id.* This intent was further confirmed by the fact that the judgment itself was attached to the appeal bond. *Id.* On these facts, the court held that a notice of appeal that can reasonably be construed as a good faith attempt to appeal from a final judgment or appealable order was sufficient to preserve the issue for review. *Id.*

In *Allison*, the only order mentioned in the notice of appeal was the judgment on the jury's verdict. At the close of the plaintiff's case, the trial court had also directed verdicts in favor of the defendant's parent company, another subsidiary and an individual defendant. When the plaintiff attempted to challenge on appeal the directed verdicts in favor of the parent and sister corporation, both objected on the ground that the notice of appeal failed to specify the directed verdicts as orders or judgments appealed from. The court held that the parent and sister corporation were or should have been aware that the plaintiff's appeal was taken from the directed verdicts in their favor. *Allison*, 738 S.W.2d at 443. The issue was clearly stated in the motion for new trial and both defendants were listed as parties to the appeal. *Id.* As was also true in *Weller*, the judgments the plaintiff was attempting to appeal did not become final until the ruling on the

order designated in the notice. The court found that the defendants were neither misled nor prejudiced and that the actions of the plaintiff were a good faith effort to comply with the provisions of Rule 81.08(a).

*Williams* involved a notice of appeal which simply stated it was from "an appealable order and judgment" without specifically designating the order sustaining motions for summary judgment filed by the two defendants. We held that the defendant raising the issue of defective notice on appeal was well aware of what judgment was at issue on appeal and that there was no confusion between judgments or parties that would cause us to dismiss the appeal. 660 S.W.2d at 439.

■ In contrast to *Weller, Allison* and *Williams,* we find no ambiguity in Plaintiff's notice of appeal in this case. It specifically and unambiguously designates the separate judgment against Home as the judgment or order appealed from, attaches a copy of only that judgment, and designates only Home as the respondent. Utica is mentioned only as a party to the proceeding below, information which must be listed even if the judgment in Home's favor was the only judgment appealed from. Contrary to Plaintiff's contention on appeal, we find no indication in the record that Utica either knew or should have known Plaintiff intended to appeal the judgment in Utica's favor prior to the (late) filing of Plaintiff's initial brief on appeal. There is no indication that the notice of appeal was served on Utica[7] and the Memorandum of the Clerk and circuit court's minutes reflect service only upon Home.[8] Although *Green Hills* suggests that inclusion in the list of issues required by Rule A–300 will not be deemed an amendment of the notice of appeal, there is no indication that the list of issues mentioning Utica was ever served upon Utica in any event. Most of the correspondence from Plaintiff's counsel received

by this court fails to reflect copies to other parties and those documents that do are not of a character that would suggest the appeal involved any party other than Home. In sum, assuming *arguendo* that Plaintiff intended to appeal the judgment in favor of Utica, we find nothing in the record to support a finding of a good faith effort on Plaintiff's part to apprise either Utica or this court that this was its intent. On the other hand, if as appears more likely from the record, Plaintiff decided to appeal the judgment in Utica's favor sometime after the notice was filed, Plaintiff's recourse was to seek leave to file a late notice of appeal pursuant to Rule 81.07(a). Having failed to do so, Plaintiff should not now be heard to complain. Accordingly, we hold that Plaintiff has failed to preserve any allegations of error with respect to the separate summary judgment in favor of Utica and dismiss the appeal as to defendant Utica.

CRANDALL and DOWD, JJ., concur.

---

**7.** In its reply to Utica's motion and in its brief on appeal, Plaintiff repeatedly asserts that Utica received a copy of the notice of appeal, apparently because this court's records reflect an entry of appearance by counsel for Utica on January 17, 1995, the day the notice was filed in this court. This is a misinterpretation of our record. Our clerk's office *automatically* enters an appearance of record by the counsel shown in the notice of appeal for each party listed as a party to the case

below. It does not indicate any affirmative action by counsel for those parties and does not in any way indicate that such counsel received a copy of the notice of appeal or are otherwise aware of the filing.

**8.** This was proper because only Home was designated as respondent and the only judgment mentioned was the judgment against Home.