SHEPHERD, Circuit Judge.
Monarch Fire Protection District of St. Louis County, Missouri, appeals several adverse rulings in favor of Freedom Consulting & Auditing Services, Inc., Brett Turner, Freedom’s owner, and Karen Indellicati, a Freedom employee. We affirm the district court.[1]
I.
The International Association of Firefighters Local 2665 (the “Firefighter Union”) represents Monarch’s employees. The Firefighter Union requested an independent audit of Monarch’s self-funded group health plan because union representatives believed that Monarch’s board of directors had illegally approved a non-covered medical procedure for a plan member.
Monarch hired Freedom to conduct the audit.[2] In order to provide Freedom with the information necessary to audit the health plan, Monarch was required under the privacy restrictions of the Health Insurance Portability and Accountability Act of 1996 (HIPAA) to execute a contract with Freedom in which Freedom agreed to safeguard “protected health information” (PHI) it received. See 45 C.F.R. § 164.502(e)(1)(i) (providing that an entity covered by HIPAA may disclose PHI to a third party that agrees to “appropriately safeguard the information”). Accordingly, the parties executed the “Business Associate Agreement” (BAA), which prohibited Freedom from disclosing PHI to third parties.
Indellicati conducted the audit for Freedom, and Monarch provided her with copies of documents, including claim documents, medical bills, medical records, and reports of paid claims that contained plan member PHI. See 45 C.F.R. § 160.103 (“Protected health information means individually identifiable health information[.]”). Indellicati generated a “Public Audit Report,” which contained aggregate data with no unique identifiers, and a “Privileged Supplement,” which contained plan member PHI in the form of medical claims of individual plan members, whether the claim was approved or denied, and corresponding medical records.
Indellicati shared the Public Audit Report and Privileged Supplement with Firefighter Union attorneys. One of the union attorneys disclosed them to St. Louis County law enforcement, and a criminal investigation ensued. Freedom was served with a subpoena for the complete audit. In accordance with the BAA, Free *636 dom notified Monarch of the subpoena and turned over the audit documents to law-enforcement.
Monarch asked Freedom to return the documents it had received in the course of performing the health care plan audit. Freedom refused because of the ongoing criminal investigation. Monarch responded with a letter asserting that Freedom had violated the BAA and terminating the contract.
Monarch sued Freedom, Indellicati, and Turner, alleging that PHI had been improperly disclosed to Firefighter Union attorneys in violation of the BAA. Specifically, Monarch filed: (1) a claim for breach of contract or rescission against Freedom; (2) claims for conversion against Freedom, Indellicati, and Turner; and (3) a request for a mandatory injunction requiring the return of all documents containing PHI that Freedom received for purposes of conducting the audit. Monarch also sought to recover attorneys’ fees and costs that it incurred in responding to St. Louis County’s criminal investigation into the allegations of wrongdoing made in the Privileged Supplement, in representing its directors during the criminal investigation, and in the litigation between the parties.
Complying with pre-trial discovery requests, Freedom returned some of the PHI documents, but it retained copies of the Privileged Supplement, as well as certain emails and other electronic files containing PHI. Monarch moved for sanctions after Indellicati’s deposition revealed that she had destroyed her computer’s hard drive, which Monarch alleged contained information relevant to the litigation. The district court withheld its ruling on the motion until the case proceeded to trial, but it noted that the probable sanction for Indellicati’s actions would be an adverse inference instruction to the jury.
Monarch filed a motion for summary judgment, as did Freedom, Turner, and Indellicati. The district court granted summary judgment in favor of Monarch on its breach of contract claim. It granted summary judgment in favor of Freedom, Turner, and Indellicati on Monarch’s conversion claims. In addition, the district court held that Monarch was not entitled to attorneys’ fees or costs that it incurred in responding to St. Louis County’s criminal investigation into the allegations of wrongdoing made in the Privileged Supplement or in the litigation between the parties. The court did, however, conclude that Monarch’s claim for attorneys’ fees in representing its directors during the criminal investigation survived summary judgment, and the parties subsequently settled the claim. The district court also rejected Monarch’s claim for punitive damages as moot given the dismissal of the conversion claims. The district court granted Monarch’s requested injunctive relief and ordered Freedom to return any documents containing PHI that Freedom had retained. Monarch’s motion for sanctions was dismissed in an order issued by the district court summarily rejecting all pending motions in the case as moot.
Monarch appeals the district court’s dismissal of its conversion claim and underlying claim for punitive damages, the district court’s decision that the BAA’s indemnity clause did not entitle Monarch to attorneys’ fees and costs, and the district court’s denial of its motion for sanctions.
II.
We review a district court’s grant of summary judgment de novo. Anderson v. Durham D & M, L.L.C., 606 F.3d 513, 518 (8th Cir.2010). We will affirm the grant of summary judgment if “there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.” Fed.R.Civ.P. 56(a).
First, Monarch contends that the district court erred in dismissing its con *637 version claim. Under Missouri law, a copy of a document cannot be converted where the owner has not been deprived of possession of the property or prevented from utilizing the property. Riley v. L.J. Schuster Co., 844 S.W.2d 521, 523 (Mo.Ct. App.1992). Here, the undisputed facts show that Monarch had access to the relevant documents at all times and that Freedom merely retained copies. Accordingly, Monarch cannot show that Freedom deprived it of the right to possession, which it must do to establish conversion under Missouri law. JEP Enters., Inc. v. Wehrenberg, Inc., 42 S.W.3d 773, 776 (Mo.Ct.App.2001).[3]
Second, Monarch argues that the district court erred in determining that the BAA’s indemnity clause did not obligate Freedom to pay Monarch’s attorneys’ fees and costs incurred in suing Freedom and in responding to St. Louis County’s criminal investigation into the allegations of wrongdoing made in the Privileged Supplement. We review de novo issues of contract interpretation, including the construction of indemnity clauses. In re Fitzgerald Marine & Repair, Inc., 619 F.3d 851, 858 (8th Cir.2010).
Monarch contends that the indemnity clause of the BAA authorizes it to recover attorneys’ fees incurred in the litigation between the parties and in responding to St. Louis County’s criminal investigation into the allegations of wrongdoing made in the Privileged Supplement. The indemnity clause of the BAA provides:
[Freedom] will indemnify and hold harmless District and Plan and any District or Plan affiliate, trustee, officer, director, employee, volunteer or agent from and against any claim, cause of action, liability, damage, cost or expense, including attorneys’ fees and court or proceeding costs, arising out of or in connection with any unauthorized use or disclosure of PHI or any failure in security measures affecting PHI or any other breach of the terms of this Agreement by [Freedom] or any person or entity under [Freedom]’s control.
Missouri follows the American Rule on attorneys’ fees, which provides that each party to litigation must pay its own litigation expenses unless a statute specifically authorizes recovery of attorneys’ fees or a contract provides for them. Lucas Stucco & EIFS Design, LLC v. Landau, 324 S.W.3d 444, 445 (Mo.2010) (en banc). We first consider whether the indemnity clause entitles Monarch to attorneys’ fees incurred in the litigation between the parties where the indemnity clause does not expressly refer to litigation between the parties. Although the Missouri Supreme Court has not addressed this issue specifically, the Court has held that in order for a party to recover attorneys’ fees incurred in enforcing its right to indemnity under a contract, the indemnity clause at issue must expressly refer to the enforcement of the right to indemnity. Nusbaum v. City of Kansas City, 100 S.W.3d 101, 109 (Mo.2003) (en banc) (per curiam). Because both the enforcement of the right to indemnity under a contract and the enforcement of rights in general under a contract involve litigation between the contracting parties, we find the Nusbaum decision analogous to the issue here.[4] *638 Accordingly, we think the Missouri Supreme Court would require an indemnity clause to contain express language referencing litigation between the parties before interpreting it to allow a party to recover attorneys’ fees incurred in an action asserting its rights under the contract. Id.; see also Lee v. Investors Title Co., 241 S.W.3d 366, 368 (Mo.Ct.App.2007) (holding that a trial court must award attorneys’ fees when an indemnity clause expressly provides for an award of attorneys’ fees in enforcing rights under the contract); Weitz Co., L.L.C. v. MacKenzie House, L.L.C., No. 07-0103-CV-W-ODS, 2010 WL 1839118, at *2 (W.D.Mo. May 6, 2010) (holding that a party was entitled to attorneys’ fees under an indemnification clause because the clause expressly provided for recovery if it became “necessary for either party to institute legal proceedings against the other party” to enforce the terms of the contract).
An express language requirement not only comports with the Nusbaum decision, it also squares with the “cardinal principle” of contract interpretation, which “is to ascertain the intention of the parties and to give effect to that intent.” Dunn Indus. Grp., Inc. v. City of Sugar Creek, 112 S.W.3d 421, 428 (Mo.2003) (en banc) (per curiam); see also In re Binghamton Bridge, 70 U.S. 51, 76, 3 Wall. 51, 18 L.Ed. 137 (1865) (“For it should never be lost sight of, that the main canon of interpretation of a contract, is to ascertain what the parties themselves meant and understood.”). Indemnity suits ordinarily arise in the context of third-party claims. See Praetorian Ins. Co. v. Site Inspection, LLC, 604 F.3d 509, 516 (8th Cir.2010). Absent language expressly requiring the payment of attorneys’ fees incurred in litigation between the parties, the non-drafting party may be unaware that by agreeing to cover the drafting party’s attorneys’ fees arising from a claim for indemnity, it is actually assenting to cover attorneys’ fees the other party incurs in suing for breach of the agreement. In addition, an express language requirement reflects the American Rule’s longstanding policy against substantive fee-shifting as part of a merits award. See Lamb Eng’g & Constr. Co. v. Neb. Pub. Power Dist., 103 F.3d 1422, 1437 (8th Cir.1997) (citing Chambers v. NASCO, Inc., 501 U.S. 32, 59, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (Scalia, J., dissenting)).
Turning to the indemnity clause in the BAA, because it contains no express language requiring Freedom to pay Monarch’s attorneys’ fees and costs in the event of litigation between the parties, we agree that Freedom is not contractually obligated to pay the attorneys’ fees and costs that Monarch incurred in this litigation. In this case, the structure of the agreement also supports the district court’s conclusion. The contract uses identical language to trigger Freedom’s obligation to indemnify Monarch under paragraph 7.H(i) and to trigger Freedom’s obligation to defend Monarch under paragraph 7.1(1). Paragraph 7.1(1) provides that if Monarch “is named a party in any judicial, administrative or other proceeding arising out of or in connection with any unauthorized use or disclosure of PHI,” then Monarch has the option to tender its defense to Freedom, and Freedom must provide attorneys to represent Monarch’s interests. But it would be nonsensical to construe paragraph 7.1(1) to include a lawsuit between Monarch and Freedom, because then Freedom could be required to provide attorneys to represent Monarch’s interests in a lawsuit against Freedom. See Hooper Assocs., Ltd. v. AGS Computers, Inc., 74 N.Y.2d 487, 549 N.Y.S.2d 365, 548 N.E.2d 903, 905 (1989). The same language typically should be given the same meaning in neighboring paragraphs of a contract, Maupin v. S. Sur. Co., 205 Mo.App. 81, 220 S.W. 20, 21 (1920), and it *639 follows that the duty to indemnify in paragraph 7.H(i), like the duty to defend in paragraph 7.1(1), does not apply to actions between the parties. See Oscar Grass & Son, Inc. v. Hollander, 337 F.3d 186, 199— 200 (2d Cir.2003).
We also conclude that Monarch cannot survive summary judgment on its claim that the indemnity clause entitles it to the attorneys’ fees it incurred in preparing a response to the Privileged Supplement. The indemnity clause requires Freedom to pay attorneys’ fees “arising out of or in connection with” any unauthorized disclosure of PHI, and Monarch contends that Freedom’s disclosure of PHI within the Privileged Supplement sparked the investigation that required it to prepare a response to the Privileged Supplement. The undisputed facts, however, show that Monarch authorized its attorney, Michael Bakewell, to prepare a response to the Privileged Supplement in November 2007, see Joint App’x at 899 ¶ 11, and that law enforcement did not approach Bakewell about the criminal investigation until December 2007, see Joint App’x at 1643. Even if there is some nexus between the disclosure of PHI within the Privileged Supplement and the criminal investigation, there is no nexus between the disclosure of PHI and Monarch’s decision to respond to the Privileged Supplement. The only conclusion supported by the record is that Monarch would have incurred the attorneys’ fees at issue whether or not there was a criminal investigation.
Third, Monarch argues that the district court abused its discretion in denying Monarch’s motion for sanctions. We accord the district court substantial deference in ruling on a motion for sanctions, and the court abuses its discretion only if it bases its ruling on an erroneous view of the law or a clearly erroneous assessment of the evidence. Greyhound Lines, Inc. v. Wade, 485 F.3d 1032, 1035 (8th Cir.2007).
Here, the district court withheld ruling on Monarch’s Rule 37 motion for sanctions until the case proceeded to trial, noting that the appropriate sanction for Indellicati’s actions would likely be an adverse inference jury instruction. See Stevenson v. Union Pac. R.R. Co., 354 F.3d 739, 746 (8th Cir.2004) (holding that in order for an adverse inference instruction to be appropriate, “there must be a finding of intentional destruction indicating a desire to suppress the truth”). After the resolution of many of the claims on summary judgment and the subsequent settlement of the remaining claims by the parties, the district court simply dismissed all pending motions as moot. We cannot say the district court abused its discretion by declining to impose a sanction on Indellicati when the case did not proceed to trial because nothing in the record suggests that the district court based its ruling on a legal error or a clearly erroneous assessment of the evidence. Greyhound Lines, 485 F.3d at 1035.
III.
Accordingly, we affirm the decisions of the district court.

. The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri.

. Monarch initially hired Independent Insurance Auditing Services, Inc., which has since been purchased by Freedom.

. Because we conclude that Monarch’s conversion claim fails as a matter of law, we do not address Monarch’s dependent argument regarding punitive damages.

. "If the Missouri Supreme Court has not yet addressed a particular issue, we may consider relevant state precedent, analogous decisions, considered dicta, and any other reliable data.” Praetorian Ins. Co. v. Site Inspection, LLC, 604 F.3d 509, 516 n. 13 (8th Cir.2010) (quotation omitted).