# United States Court of Appeals
### For the Eighth Circuit

_____

No. 20-3572
_____

Kris Crutcher; Tri-Lakes Diagnostic Imaging, LLC

*Plaintiffs - Appellants*

v.

MultiPlan, Inc.; Private Healthcare Systems, Inc.

*Defendants - Appellees*
_____

Appeal from United States District Court
for the Western District of Missouri - Springfield
_____

Submitted: September 23, 2021
Filed: January 5, 2022
_____

Before SMITH, Chief Judge, GRUENDER and STRAS, Circuit Judges.
_____

SMITH, Chief Judge.

Kris Crutcher, owner of Tri-Lakes Diagnostic Imaging, LLC (TLDI), brought suit against MultiPlan, Inc. (MultiPlan) and its subsidiary Private Healthcare Systems, Inc. (PHCS), alleging numerous causes of action, including those relevant to this appeal—breach of contract and a right to an award of attorneys' fees. The district court denied her claim of attorneys' fees based on a finding that the indemnity clause

in the Network Agreement to which both parties succeeded did not provide for an award of attorneys' fees in litigation between parties to the contract. The court also held that Crutcher's conduct waived the contractual amendment-in-writing requirement and that the revised fee schedule was therefore a valid modification to the contract. We affirm the denial of attorneys' fees but reverse as to waiver.

## I. *Background*
### A. *The Parties*

Crutcher and TLDI (collectively, appellants) operated a small medical diagnostic imaging practice located in Branson, Missouri. MultiPlan and PHCS (collectively, appellees) are two preferred provider organizations (PPOs) that operate as intermediaries between providers and payors (i.e., health insurance agencies) in the healthcare sector. As part of the PPO relationship, MultiPlan enters into agreements with healthcare providers forming a network. Under these arrangements, providers agree to charge payors a discounted rate in exchange for "steerage." Steerage represents the increase in business that results from being in-network. MultiPlan also enters into agreements with third-party payors, such as insurance companies, for access to MultiPlan's PPO network discounted rates on behalf of their plan members. Individuals on such plans receive healthcare services from PPO providers at discounted rates. PHCS is MultiPlan's nationwide primary PPO network.

### B. *The Network Agreement*

On April 1, 2000, Medical Investments of Branson, LLC, doing business as Branson Imaging, entered into the Network Agreement with United Payors & United Providers (UP&UP). Pursuant to this agreement, Branson Imaging, as "Provider," agreed to accept discounted rates for UP&UP clients in exchange for UP&UP's promise to use best efforts to require clients to create financial incentives or benefits for their participants to seek out the services of Branson Imaging.

Section IV.A. of the Network Agreement provides as follows:

> Provider shall render Services, subject to the availability of facilities and services, as are available to Covered Persons in accordance with Covered Person's Health Benefit Program. Provider agrees to accept payment in amounts not exceeding those specified in Attachment A, attached hereto, as payment in full for all Charges for all Services rendered to Covered Persons. All entities billing under Provider Tax Identification Number will be subject to rates specified in Attachment A.

R. Doc. 295-2, at 15. The original version of Attachment A to the Network Agreement, titled "Percent of Charges," states that providers would be paid at a discounted rate of "75% of Charges for Services rendered." *Id.* at 20. Additionally, Section IV.Q. of the Network Agreement contains an indemnity clause, reading as follows:

> UP&UP shall indemnify and hold Provider harmless from loss, damage or defense costs (including reasonable attorneys' and defense fees) arising from actual or alleged wrongful acts or omissions of UP&UP, its officers, employees, subcontractors or other agents, in performing services contemplated under this Agreement.

*Id.* at 17. The Network Agreement also provided that it would "renew[] automatically for successive one (1) year terms unless UP&UP or Provider, [gave] written notice to the other party of its intention to terminate this Agreement no later than ninety (90) days prior to the expiration of the then current term." *Id.* The contract also noted that "UP&UP [was] contracting for itself and for the benefit of its wholly-owned subsidiaries or affiliates having common management and control with UP&UP, including, but not limited to, UP&UP, Inc. d/b/a America's Health Plan® and any subsequently acquired subsidiary, company or affiliate." *Id.* at 14.

UP&UP was later acquired by BCE Emergis Corp. (BCE), which was then acquired by MultiPlan in 2004. MultiPlan acquired PHCS in October 2006. MultiPlan and PHCS thereby succeeded to the original Network Agreement between UP&UP and Branson Imaging.

## C. *TLDT*

On April 2, 2001, "Branson Imaging, LLC" was canceled as a fictitious name by Medical Investments of Branson, LLC, and MultiPlan changed the TIN associated with the Network Agreement in its electronic systems.

On January 10, 2003, Articles of Incorporation were filed on behalf of Tri-Lakes Diagnostic Technologies (TLDT). On or around February 8, 2003, Branson Imaging wrote to Blue Cross Blue Shield of Missouri, advising that Branson Imaging was operating under the new name of TLDT and that Branson Imaging's TIN had changed. MultiPlan accordingly changed the "provider name" and TIN associated with the Network Agreement in its electronic systems.

## D. *The August 1, 2007 Letter*

On August 1, 2007, appellees sent a letter addressed to Branson Imaging at the premises then occupied by TLDT. The letter notified Branson Imaging that because of the integration of MultiPlan and PHCS, reimbursement under the Network Agreement would be changed from the 25-percent discount rate to an SSRIM[1] fee schedule. The correspondence included a written copy of the new fee schedule. No one from Branson Imaging or TLDT responded to this letter. TLDT continued to operate and accept discounts under the Network Agreement, as amended by the SSRIM fee schedule following the August 1, 2007 letter.

---

[1]The SSRIM schedule followed a variable pricing scheme rather than a fixed discount rate as the original contract specified.

## E. *TLDI*

In September 2007, Crutcher began providing office management services for TLDT. On February 5, 2008, Crutcher filed Articles of Organization for TLDI. TLDI occupied the office space formerly occupied by TLDT and Branson Imaging. On February 22, 2008, Crutcher wrote to PHCS advising that the imaging facility had again changed its ownership and name.

On or about May 5, 2008, Crutcher sent a fax to appellees, advising again of the name change and requesting that TLDI be substituted for Branson Imaging under the Network Agreement. The fax included a letter from Crutcher to "ATTN: Registrar Fax 1-781-487-8273," with the subject line "Name Change/TIN change," dated April 16, 2008. R. Doc. 295-2, at 30. That letter reads:

> Dear Registrar, we have changed our name and EIN. The former name for our company was Branson Imaging. The address remains the same as well as the services and imaging capabilities we offer. Please make the following changes to update your system. See accompanying W-9 form.
>
> Tri Lakes Diagnostic Imaging, LLC (formerly known as Branson Imaging)
> 523 State Hwy 248, Suite 300
> Branson, MO 65616
> 417-332-2152
> Fax 417-332-0443

*Id*. Crutcher identified the "NEW EIN" and noted that "[t]he billing address is the same as the business address above." *Id*. She concluded the letter by stating: "We look forward to continuing to provide imaging services for our clients." *Id*. Crutcher then provided a completed W-9 form with the same name (TLDI), address, and EIN as indicated in the April 16, 2008 letter.

Crutcher's May 5, 2008 fax to appellees had a "Fax Cover Sheet," with the handwritten subject line, "Name change/EIN change." It included a handwritten note from Crutcher stating, "please make this change in your system." *Id.* at 29.

On or about June 9, 2008, Crutcher sent another fax to MultiPlan and PHCS, again asking for TLDI to be substituted for Branson Imaging under the Network Agreement. In addition, Crutcher wrote the following:

> I have tried to update this information online and noticed that in your system (find a provider) it is still showing as Branson Imaging. I would greatly appreciate the assistance with this update and look forward to continued patient services for your clients. Please let me know if there is any additional information I need to provide you for this update. Please see attached W-9 form.

*Id.* at 34–35. Following her June 9, 2008 fax, Crutcher repeatedly reached out to PHCS to complain that appellees had not yet substituted TLDI for Branson Imaging under the Network Agreement and that appellees' clients were not treating TLDI as a participating provider. She also appealed a number of claims on behalf of TLDI to appellees' clients, asking that they be reprocessed and paid at the in-network level pursuant to the Network Agreement.

MultiPlan's records show that the provider name and TIN associated with the Network Agreement were eventually changed in MultiPlan's electronic systems to TLDI and the pertinent TIN.

F. *Subsequent Dealings Between the Parties*

On or about February 20, 2009, MultiPlan replied in a letter to questions that Crutcher had raised about TLDI's reimbursement on a claim. It stated, "Multiplan has received your request for pricing review of the above facility bill. Upon review it has

been determined that no adjustment is required. The correct allowable amount for the attached claim is $440.51." R. Doc. 346-3, at 1 (emphasis omitted). In addition, the letter noted that the claim had been priced according to the "PHCS Facility – SSRIM fee schedule" and reflected "the correct allowable amount under [the] PHCS Facility Agreement." *Id*. (emphasis omitted). On July 16, 2009, Crutcher telephoned MultiPlan regarding another claim, and MultiPlan advised her that the claim was priced according to a "complex fee schedule" associated with the Network Agreement. R. Doc. 315-16, at 21.

On or about July 17 and 20, 2009, Crutcher, on behalf of TLDI, sent a fax to MultiPlan requesting a copy of the Network Agreement. MultiPlan responded on July 22, stating that it was having trouble finding a copy of the original Network Agreement and representing that MultiPlan had been added to the Network Agreement through integration with BCE effective September 1, 2004, and that PHCS had been added through acquisition on or about December 1, 2007. MultiPlan also represented that it had changed the entity name from Branson Imaging to TLDI as well as the pertinent tax ID number per Crutcher's request. A week later, on July 29, MultiPlan found a copy of the original Network Agreement and faxed it to Crutcher. This document reflected a flat 25-percent discount rate rather than the complex SSRIM fee schedule.

At the time, Crutcher and TLDI did not believe they were bound by a contract with PHCS to accept the reimbursement rates. Rather than object to the agreement, opt out of it, or seek its termination, TLDI continued to provide services to patients covered by MultiPlan's clients and continued to accept payment for those services under the SSRIM fee schedule. Approximately six years later, Crutcher began to send correspondence on behalf of TLDI requesting that they produce a separate written contract between MultiPlan/PHCS and TLDI as well as the fee schedule applicable to TLDI since 2008. Subsequently, in August 2015, counsel for Crutcher and TLDI

sent MultiPlan a letter denying the existence of a valid contract between TLDI and appellees. The letter asserted that all discounts taken by appellees' clients were improper.

MultiPlan responded that TLDI had been substituted for Branson Imaging under the original Network Agreement in 2008 based on Crutcher's request and that neither TLDI nor its predecessors had ever requested to opt out or terminate the Network Agreement. MultiPlan nonetheless agreed to disenroll TLDI, removing the company from its systems and provider database and stopping all discounts as of September 8, 2015. Appellants filed this action on November 6, 2015.

## G. *Litigation*

Crutcher and TLDI filed suit against MultiPlan, alleging several causes of action. Only two are present before this court—breach of contract and attorneys' fees. Crutcher and TLDI allege that MultiPlan breached the agreement (to which both parties succeeded) by applying discounts to TLDI's claims in excess of the agreed-upon 25-percent discount rate. They seek damages as well as attorneys' fees and costs under the contractual indemnity clause.

Crutcher and TLDI allege that MultiPlan, pursuant to the Network Agreement, agreed upon a 25-percent discount rate. They assert that appellees breached the contract by charging them under the SSRIM fee schedule. The use of the SSRIM produced, in some cases, discounts exceeding the agreed-upon 25 percent. They further allege that the Network Agreement provides that "[a]ll amendments or modifications to this Agreement shall be mutually agreed to in writing" and that the parties never mutually agreed in writing to any contractual modification, including the SSRIM fee schedule. R. Doc. 295-2, at 18. Appellees argue in reply, and the district court found, that appellants consented to the fee schedule change by their

conduct. The court treated their consent as a waiver of their right to object to the modification as not occurring by a mutually agreed-to writing.

The parties filed cross-motions for summary judgment on the breach-of-contract claim. The district court applied Missouri law to deny TLDI's request for attorneys' fees based on a finding that the contractual indemnity clause does not expressly refer to litigation between the parties. The court granted in part MultiPlan's motion based on a finding of contract modification by waiver through conduct on the part of TLDI.

## II. *Discussion*

Crutcher and TLDI appeal the district court's grant of partial summary judgment to MultiPlan, arguing that the court erred in finding that no genuine dispute of material fact existed as to the issue of waiver. They also appeal the court's denial of attorneys' fees.

A district court's grant of summary judgment receives de novo review on appeal. *Cottrell v. Am. Fam. Mut. Ins. Co., S.I.*, 930 F.3d 969, 971 (8th Cir. 2019). Summary judgment is appropriate where, viewing the evidence in the light most favorable to the non-moving party, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### A. *Attorneys' Fees*

Appellants' breach-of-contract claim included a request for an award of attorneys' fees based on Section IV.Q. of the Network Agreement. The question is whether under Missouri law the contractual language includes costs incurred in litigation between the parties to enforce the contract's terms. We hold that the contract does not include litigation between the contracting parties and that it

therefore limits recovery for attorneys' fees to costs incurred in defending third-party lawsuits.

"Missouri follows the American Rule on attorneys' fees, which provides that each party to litigation must pay its own litigation expenses unless a statute specifically authorizes recovery of attorneys' fees or a contract provides for them." *Monarch Fire Prot. Dist. of St. Louis Cnty. v. Freedom Consulting & Auditing Servs., Inc.*, 644 F.3d 633, 637 (8th Cir. 2011) (citing *Lucas Stucco & EIFS Design, LLC v. Landau*, 324 S.W.3d 444, 445 (Mo. 2010) (en banc)). The issue before the court in *Monarch* was whether a contractual indemnity clause entitled the plaintiff to attorneys' fees and costs incurred in a breach-of-contract action between the contracting parties. The indemnity clause at issue provided that the defendant would indemnify the plaintiff and hold him harmless "from and against any claim, cause of action, liability, damage, cost or expense, including attorneys' fees and court or proceeding costs, arising out of or in connection with" the defendant's wrongful acts, including "breach of the terms of [the contract] by [the defendant] or any person or entity under [the defendant's] control." *Id*. The court held this language insufficiently definite to permit recovery of attorneys' fees under Missouri law. The court relied on the Missouri Supreme Court's decision in *Nusbaum v. City of Kansas City*, 100 S.W.3d 101, 109 (Mo. 2003) (en banc) (per curiam), for the proposition "that in order for a party to recover attorneys' fees incurred in enforcing its right to indemnity under a contract, the indemnity clause at issue must expressly refer to the enforcement of the right to indemnity." *Monarch*, 644 F.3d at 637. In addition, the court noted that such a requirement "squares with the 'cardinal principle' of contract interpretation, which 'is to ascertain the intention of the parties and to give effect to that intent.'" *Id.* at 638 (quoting *Dunn Indus. Grp., Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 428 (Mo. 2003) (en banc) (per curiam)). Given that an indemnity clause ordinarily envisions third-party claims, express language referencing litigation between contracting parties is needed to ensure that parties know their obligations under the

contract. *See id.*; *see also Jacobson Warehouse Co. v. Schnuck Mkts., Inc.*, 13 F.4th 659, 670 (8th Cir. 2021). Finally, the court reasoned that "an express language requirement reflects the American Rule's longstanding policy against substantive fee-shifting as part of a merits award." *Id.*

The indemnity clause in Section IV.Q. does not contain express language referring to the recovery of attorneys' fees relating to litigation between Crutcher and TLDI and MultiPlan. This clause promises indemnity, including attorneys' fees, in the event of loss or damage to the provider through MultiPlan's "wrongful acts or omissions." R. Doc. 295-2, at 17. It contains no explicit reference to litigation between the contracting parties. *Cf. Sheppard v. East*, 192 S.W.3d 518, 523 (Mo. Ct. App. 2006) ("In the event of litigation between the parties, the prevailing party shall recover . . . the cost of litigation including reasonable attorney's fees." (alteration in the original)); *Jackson v. Christian Salvesen Holdings, Inc.*, 978 S.W.2d 377, 384 (Mo. Ct. App. 1998) ("In the event any dispute between the parties hereto concerning this . . . Agreement should result in litigation, the prevailing party shall be reimbursed by the other for all reasonable costs, including . . . reasonable attorney's fees . . . ."). Nor does it refer to the enforcement of contractual rights. *Cf. Lee v. Invs. Title Co.*, 241 S.W.3d 366, 368 (Mo. Ct. App. 2007) (awarding attorneys' fees where contract expressly provided for "attorneys' fees . . . in connection with [plaintiff's] enforcement of its rights under this Agreement"); *RJF Int'l Corp. v. B.F. Goodrich Co.*, 880 S.W.2d 366, 369 (Mo. Ct. App. 1994) (awarding attorneys' fees where contract expressly provided for indemnity for "each and every failure or breach of any representation, warranty, covenant and indemnification").

Rather, the language of Section IV.Q. limits recovery of attorneys' fees to circumstances where liability to third parties is created through MultiPlan's "wrongful acts or omissions . . . in performing services contemplated under this Agreement." R. Doc. 295-2, at 17. That language is insufficient to meet the express

-11-

language requirement that applies to litigation involving the contracting parties. And even if the appellants could recover attorneys' fees for litigation between the parties, they could only recover "defense costs (including reasonable attorneys' and defense fees)," *id.*, which would not include attorneys' fees incurred in a suit they brought against MultiPlan. *See Stahlhuth v. SSM Healthcare of St. Louis*, 289 S.W.3d 662, 670 (Mo. Ct. App. 2009) ("In determining the parties' intent, the courts look to the language of the contract, giving the terms their plain, ordinary, and usual meaning and so construing the terms to avoid rendering other terms meaningless.").

Since *Monarch*, Missouri courts have not departed from its logic. The requirement for express language protects the intent of the contracting parties and comports with the American Rule. Accordingly, we hold that the Network Agreement's indemnity clause does not permit recovery of attorneys' fees in this dispute between the contracting parties.

### B. *Modification of Contract by Waiver*

Section VI.H. of the Network Agreement dictates that any amendment to the contract must be mutually agreed to in writing. The implementation of the SSRIM fee schedule changed the discount rate, which Attachment A to the original Agreement originally set at 25 percent. The record contains no signed writing showing that appellants consented to the change from a 25-percent discount to the SSRIM fee schedule. Hence, without a signed writing, MultiPlan must show that appellants waived the amendment-in-writing requirement. The district court found that Crutcher and TLDI's continuation of business under the SSRIM evinced an intent to waive this requirement. Appellants claim that this conclusion was error on three distinct grounds. First, they argue that appellees forfeited the affirmative defenses of waiver and modification by failing to plead them in their answer. Second, they argue that waiver is unsupported in the record. Finally, they argue that the proposed

modification must fail for lack of consideration. We will consider each argument in turn.

### 1. *Adequacy of the Pleadings*

Appellants contend that appellees failed to plead the affirmative defenses of waiver and modification in their answer, such that they forfeited those defenses, precluding the district court from raising them sua sponte. Appellants argue that these defenses were not among the 29 affirmative defenses set forth in the answer. Appellees only raised modification in MultiPlan's motion for summary judgment. Waiver was not raised by a party at all but was instead inserted by the court in its decision.

"Waiver is an affirmative defense which must be affirmatively pleaded." *Barnwell & Hays, Inc. v. Sloan*, 564 F.2d 254, 255 (8th Cir. 1977) (per curiam); *see also* Fed. R. Civ. P. 8(c). The failure to plead an affirmative defense results in its forfeiture and exclusion from the case. *Wood v. Milyard*, 566 U.S. 463, 470 (2012).

"[T]he Rule 8(c) pleading requirement is intended to give the opposing party both notice of the affirmative defense and an opportunity to rebut it," but we decline to adhere to a construction of the Rule that would privilege "form over substance." *First Union Nat'l Bank v. Pictet Overseas Tr. Corp.*, 477 F.3d 616, 622 (8th Cir. 2007). As long as "an affirmative defense is raised in the trial court in a manner that does not result in unfair surprise, technical failure to comply with Rule 8(c) is not fatal." *Id.* (alterations and internal quotation marks omitted). This includes the "bare assertion" of a defense without being "articulated with any rigorous degree of specificity." *Zotos v. Lindbergh Sch. Dist.*, 121 F.3d 356, 361 (8th Cir. 1997) (emphasis and internal quotation marks omitted).

Appellees argue that they in fact asserted the defenses of waiver and modification in their answer to the second amended complaint, in which they averred that "Plaintiffs' claims are barred in whole or in part under principles of equitable estoppel, waiver, notification, ratification, confirmation, acquiescence[,] and/or consent." R. Doc. 361, at 34. The explicit assertion of waiver in their the answer constitutes an adequate pleading for Rule 8(c) under *Zotos*. Additionally, appellees argue that these defenses were sufficiently pleaded because the answer expressly "adopt[ed] and incorporat[ed] by reference . . . all allegations and averments" made in previously-filed summary judgment pleadings, which discussed modification with respect to the SSRIM fee schedule. *Id.* at 37. These instances were sufficient to put appellants on notice of the defenses of waiver and modification. Accordingly, we hold waiver and modification to have been pleaded adequately.

## 2. *Record Evidence of Waiver*

A valid waiver requires "intentional relinquishment of a known right." *Carroll's Warehouse Paint Stores, Inc. v. Rainbow Paint & Coatings, Inc.*, 824 S.W.2d 147, 151 (Mo. Ct. App. 1992) (quoting *Bartleman v. Humphrey*, 441 S.W.2d 335, 343 (Mo. 1969)); *see also Horne v. Ebert*, 108 S.W.3d 142, 147 (Mo. Ct. App. 2003). Absent an express declaration, waiver may be implied by conduct in "a clear, unequivocal, and decisive act." *Star Dev. Corp. v. Urgent Care Assocs., Inc.*, 429 S.W.3d 487, 494 (Mo. Ct. App. 2014) (internal quotation marks omitted); *see also Robb v. Bond Purchase, L.L.C.*, 580 S.W.3d 70, 79–80 (Mo. Ct. App. 2019); *Fritts v. Cloud Oak Flooring, Co.*, 478 S.W.2d 8, 14 (Mo. Ct. App. 1972). "[T]he conduct must be so manifestly consistent with and indicative of an intention to renounce a particular right or benefit that no other reasonable explanation of [the] conduct is possible." *Horne*, 108 S.W.3d at 147 (second alteration in original) (internal quotation marks omitted).

-14-

Does the record support a finding of waiver? The district court thought so. The court noted that the new fee schedule went into effect after Crutcher asked that MultiPlan substitute TLDI for Branson Imaging. From this, the district court inferred appellants' intent to comply with whatever fee schedule was in effect at the time. Crutcher and TLDI went on to accept payment and steerage from MultiPlan for six years, from 2008 to 2014. The court concluded that the only reasonable explanation for their lengthy compliance with the revised rates is that appellants intended to waive their right to object to the introduction of the new fee schedule.

Appellants argue that the record does not support a finding of waiver. Their argument focuses on the lack of evidence that either TLDI or its predecessor Branson Imaging received an August 1, 2007 letter, sent by MultiPlan to Branson Imaging. This letter advised Branson Imaging of MultiPlan's acquisition of PHCS as well as the institution of the SSRIM fee schedule. They argue that whether this letter was received constitutes a material fact question affecting the issue of appellants' knowledge of their right to object to the modification's lack of a signed writing.

Missouri law presumes receipt of duly mailed materials. *Am. Fam. Mut. Ins. Co. v. Vein Ctrs. for Excellence, Inc.*, 912 F.3d 1076, 1083 (8th Cir. 2019). To raise this presumption, evidence must be introduced that the letter was properly addressed, stamped, and placed in the mail. *Shelter Mut. Ins. Co. v. Flint*, 837 S.W.2d 524, 528 (Mo. Ct. App. 1992). When direct proof that a particular letter was mailed is infeasible because of the volume of mail, "evidence of the settled custom and usage of the sender in the regular and systematic transaction of its business" will suffice to give rise to this presumption. *Id.* (internal quotation marks omitted). However, even if this presumption is established with evidence of custom and usage, it nevertheless "may be rebutted by evidence it was not, in fact, received." *Ins. Placements, Inc. v. Utica Mut. Ins. Co.*, 917 S.W.2d 592, 595 (Mo. Ct. App. 1996). "Evidence of non-receipt, however, does not nullify the presumption but leaves the question for the determination of the jury under all of the facts and circumstances of the case." *Id.*

Even assuming *arguendo* that appellees have presented evidence sufficient to establish the presumption of receipt, appellants have countered with evidence that it was not received. The letter was sent prior to the formation of TLDI as a legal entity. Moreover, it was addressed not to TLDT, the business that occupied the premises at the time, but to Branson Imaging, its predecessor. The letter failed to turn up after a subpoena request for the business records of Branson Imaging and TLDT. Testimony from Crutcher's husband, the sole employee of TLDT in October 2007, indicates that he had not seen the letter prior to his deposition; Crutcher herself testified to the same effect. These facts, among others, are sufficient to rebut the presumption of the letter's receipt.

MultiPlan allegedly sent this letter, addressed to Branson Imaging, to advise of changes to its provider arrangements, including the revised fee schedule. Whether it was ever received or seen by appellants or their predecessors is in dispute. The receipt of the letter advising appellants of the new fee schedule, together with their long-term practice of accepting payment and steerage may make for convincing evidence of waiver. However, not having received the letter, appellants may not have known of their right to object. Such ignorance is inconsistent with a knowing waiver.

Giving the nonmoving party the benefit of all reasonable inferences, appellants' knowledge of MultiPlan's unilateral amendment of the contract should not be presumed without proof of notice. Crutcher may have known what the fee schedule was at a later date, but that does not necessarily mean she knew that the fee schedule was a contractual change to which she, as the contracting party's successor, could have objected under the amendment-in-writing provision. That is to say, knowledge of the fee schedule then in place should not be equated with knowledge that it constituted an amendment to which she could have objected. Moreover, when Crutcher requested a copy of the Network Agreement in July 2009, MultiPlan sent her the original contract, which reflected the flat 25-percent discount, not the SSRIM fee schedule. And MultiPlan failed to advise her of this key difference. This, along

with the alleged non-receipt of the 2007 letter, makes it less likely that appellants were on notice of the change and therefore would have had no reason to raise an objection.

Appellants' course of conduct, accepting payment and steerage over the course of six years, certainly constitutes evidence of waiver. But it is also compatible with ignorance of their contractual right to object to a contract modification to which they never manifested consent in writing. Continuing with business as usual, absent proof of knowledge of the contractual right was not, on these facts, "a clear, unequivocal, and decisive act," given multiple successive changes in ownership. *Star Dev. Corp.*, 429 S.W.3d at 494 (internal quotation marks omitted). Appellants had the right (as successors to Branson Imaging) to object to the new fee schedule. Proof of their awareness of the newness of the fee schedule is needed to establish whether their contractual right to object was known, thus whether their conduct constituted "intentional relinquishment of a known right," i.e., waiver. *Carroll's Warehouse*, 824 S.W.2d at 151 (internal quotation marks omitted). The 2007 letter's receipt could aid in establishing such knowledge. Whether the letter was received is a material fact dispute. For this reason, we reverse the district court's grant of partial summary judgment to MultiPlan on the issue of waiver.

### 3. *Consideration*

Finally, appellants contend that the proposed change to the SSRIM fee schedule failed as a modification to the contract for lack of consideration. Under Missouri law, parties to a contract are free to modify it as they please, but a valid, enforceable modification requires all the ingredients necessary to form a contract in the first instance. *Zumwinkel v. Leggett*, 345 S.W.2d 89, 93–94 (Mo. 1961) (per curiam). "The essential elements of a valid contract include offer, acceptance, and bargained for consideration." *Johnson v. McDonnell Douglas Corp.*, 745 S.W.2d 661, 662 (Mo. 1988) (en banc). The requirement for consideration calls for the exchange of something of value as between the parties, which may include a promise. *Baker v.*

*Bristol Care, Inc.*, 450 S.W.3d 770, 774 (Mo. 2014) (en banc) (citing *Morrow v. Hallmark Cards, Inc.*, 273 S.W.3d 15, 25 (Mo. Ct. App. 2008)). The consideration requirement is not met, however, "when one party merely agrees to do that which it was already legally liable to do for a greater consideration, nor . . . when one party agrees to do less than it is already obligated to do for the same or greater consideration." *Medicare Glaser Corp. v. Guardian Photo, Inc.*, 936 F.2d 1016, 1020 (8th Cir. 1991) (quoting *Twin River Constr. Co. v. Public Water Dist. No. 6*, 653 S.W.2d 682, 690 (Mo. Ct. App. 1983)). Simply put, a valid modification is one that actually changes both party's obligations.

Appellants rely on one case in particular for their contention that the modification fails for lack of consideration. In *Medicare Glaser Corp.*, Medicare agreed to provide Guardian with its photofinishing business for at least two years in return for payment of certain advertising allowances. *Id.* at 1017. The court found that an attempted modification failed for lack of consideration, reasoning as follows:

> We find that no consideration existed in the February 1986 attempt to modify the contract. Guardian was already legally liable for the 6% advertising accrual payment; Guardian simply agreed to make this same payment on a monthly rather than quarterly basis. Similarly, no consideration is evidenced by Guardian's May 1986 agreement to increase the 6% advertising accrual payment to 13% since this increase was entirely offset by the 7% increase in charges to Medicare. In both cases, Guardian merely agreed to do that which it was already obligated to do, while Medicare received less than what it had contracted for under the original agreement.

*Id.* at 1020.

In *Medicare Glaser Corp.*, changing the schedule of payments did not constitute consideration, as it did not change the obligation itself, but only how

-18-

regularly the balance had to be paid. Nor did the payment increase add up to valuable consideration, being completely offset by an increase in charges. Neither change altered the card game, but merely shuffled the deck. The clear lack of consideration in *Medicare Glaser Corp.* contrasts sharply with the present facts. When the new fee schedule went into effect, MultiPlan opened up the PHCS network to providers, allowing for additional patient steerage sources. The revised fee schedule together with the increased potential patient pool changed the obligations of both parties. TLDI, as a provider, would be subject to different rates accompanied by new and different steerage sources, and MultiPlan would be obligated to honor its new discount rates as to those new sources. These alterations in position suffice as consideration.

## III. *Conclusion*

Accordingly, we affirm the district court's denial of appellants' request for an award of attorneys' fees and reverse the court's grant of partial summary judgment on the matter of waiver.

_____